# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DENNY MOLINA CANTOR,<br><br>     *Petitioner,*<br><br>     v.<br><br>JOSEPH FREDEN, in his official capacity as Officer-in-Charge, Buffalo Federal Detention Facility, U.S. Immigration & Customs Enforcement; THOMAS DECKER, in his official capacity as the Field Office Director for the New York Field Office, Immigration & Customs Enforcement; ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security; MERRICK GARLAND, in his official capacity as Attorney General of the United States,<br><br>     *Respondents* | Civil Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241** |

1

Petitioner, Denny Molina Cantor, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the Constitution of the United States. In the alternative, Petitioner seeks injunctive and declaratory relief pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* and 28 U.S.C. § 2201, the Declaratory Judgment Act. Petitioner alleges in support of his petition:

## PRELIMINARY STATEMENT

1.      Denny Molina Cantor ("Mr. Molina") is a 38-year-old Honduran man who has resided in the United States for over 17 years and has been granted withholding of removal by an Immigration Judge ("IJ"). Nonetheless, he has been held in immigration custody pursuant to 8 U.S.C. § 1226(a) for more than 32 months—*nearly three years*—without a constitutionally adequate bond hearing.

2.      Although the IJ has held two bond hearings for Mr. Molina, those hearings were an inadequate procedural protection against unlawful imprisonment because the IJ required Mr. Molina to prove that he was not a danger to the community or risk of flight, rather than holding the Government to that burden. The IJ also failed to consider whether alternatives to detention could sufficiently safeguard the Government's interests. The IJ therefore denied bond, holding that Mr. Molina failed to rebut a presumption of dangerousness because he did not disprove a criminal allegation.

3.      Mr. Molina's case is nearly identical in all material respects to *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020), in which the Second Circuit held that the detention of a noncitizen detained pursuant to 8 U.S.C. § 1226(a) for fifteen months, and previously been denied bond twice at hearings at which he bore the burden of proof, violated due process. The Second Circuit affirmed the district court's order requiring a new bond hearing within seven days

2

where the Government bore the burden of demonstrating by clear and convincing evidence that the noncitizen was a danger or a flight risk and must consider ability to pay and alternatives to detention.

4.    This Court need look no further than *Velasco Lopez* to conclude that due process demands the same result here. Mr. Molina's time in detention far exceeds the period that the *Velasco Lopez* Court held to violate due process and features the same processes the Court found to be constitutionally inadequate.

5.    Indeed, courts within this district have found even far shorter periods of detention without a constitutionally adequate bond hearing to violate due process. *See, e.g.*, *Santiago Franco v. Searls*, No. 20-CV-6639-FPG, 2021 WL 9463174, at *3 (W.D.N.Y. Mar. 3, 2021) (granting burden-shifted bond hearing to petitioner after 7 months of detention under 8 U.S.C. § 1226(a), and stating that "[t]his Court has joined the majority of courts inside and outside of the Second Circuit in concluding that the typical process afforded under BIA precedent to [non-citizens] at a § 1226(a) bond hearing is 'constitutionally inadequate'"); *Balogun v. Wolf*, No. 20-CV-6574-FPG, 2020 WL 13553495, at *6 (W.D.N.Y. Dec. 3, 2020) ("Balogun's detention has been unreasonably prolonged, and . . . additional procedures are necessary to remedy the due process violation. This is so notwithstanding the fact that [Petitioner] had a bond hearing on January 11, 2019 [11 months ago], while he was detained under Section 1226(a)."); *Aparicio-Villatoro v. Barr*, No. 6:19-CV-06294-MAT, 2019 WL 3859013, at *7 (W.D.N.Y. Aug. 16, 2019) (granting burden-shifted bond hearing to petitioner after 10 months of detention under 8 U.S.C. § 1226(a) and concluding that "the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under § 1226(a)"); *see also Adejola v. Barr*, 408 F. Supp. 3d 284, 287 (W.D.N.Y. 2019) ("[C]ourts in this Circuit have overwhelmingly concluded that it is a violation of procedural due process to require

an immigration detainee held under § 1226(a) to bear the burden at his bond hearing.").

6.     Accordingly, Mr. Molina seeks immediate release or a constitutionally adequate bond hearing in which the Government must prove, by clear and convincing evidence, that his continued detention is warranted due to dangerousness or flight risk that cannot be sufficiently mitigated by a detention alternative or reasonable monetary bond.

## **PARTIES**

7.     Petitioner Denny Molina Cantor has been detained by Immigration & Customs Enforcement since November 16, 2021, in connection with his removal proceedings at the Varick Street Immigration Court in Manhattan, New York. He is currently detained by ICE at the Buffalo Federal Detention Facility in Batavia, New York.

8.     Respondent Joseph Freden is named in his official capacity as the Officer-in-Charge of the Buffalo Federal Detention Facility, where Mr. Molina is currently detained. Respondent is an agent of U.S. Immigration and Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security ("DHS"). In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations for individuals under the jurisdiction of the Buffalo Field Office. As such, he is the custodian of Petitioner. Respondent's office is located at 250 Delaware Ave, Floor 7, Buffalo, NY 14202.

9.     Respondent Thomas Decker is named in his official capacity as Director of the New York Field Office for ICE within DHS. In this capacity, he is responsible for the administration of immigration laws and the execution of detention determinations. As such, he is the custodian of Petitioner. Respondent Decker's office is at 26 Federal Plaza, New York, New York 10278.

10.    Respondent Alejandro Mayorkas is named in his official capacity as the Secretary of DHS. In this capacity, he is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103(a); he routinely transacts business in the Southern District of New York; he

4

supervises Respondent Decker; and he is legally responsible for Petitioner's detention and removal. As such, he is the custodian of Petitioner. Respondent Mayorkas's office is in the U.S. Department of Homeland Security, Washington, DC 20528.

11.     Respondent Merrick Garland is named in his official capacity as the Attorney General of the United States. In this capacity, he is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR") pursuant to 8 U.S.C. § 1103(g). He routinely transacts business in the Southern District of New York and is legally responsible for administering Petitioner's removal proceedings and the standards used in those proceedings. As such, he is the custodian of Petitioner. Respondent Garland's office is in the U.S. Department of Justice, 950 Pennsylvania Ave., Washington, DC 20530.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. §§ 1331 and § 2241, and Article I, § 9, cl. 2 of the Constitution; the All Writs Act,         28 U.S.C. § 1651; and the Administrative Procedure Act, 5 U.S.C § 701. Additionally, the Court has jurisdiction to grant injunctive relief in this case pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint[]" on [Petitioner's] individual liberty," such that Petitioner is "in custody in violation of the . . . laws . . . of the United States." *See Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973); *see also* 28 U.S.C. § 2241; *Fay v. Noia*, 372 U.S. 391, 430-31 (1963).

13.     The federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness of their detention by immigration authorities. *See*, *e.g.*, *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## VENUE

14. Pursuant to 28 U.S.C. § 2241(d), venue properly lies in the Western District of New York. *See* 28 U.S.C. §§ 1391(e), 2241; *Onosamba-Ohindo v. Barr*, 483 F. Supp. 3d 159, 175 (W.D.N.Y. 2020), *judgment vacated on other grounds, appeal dismissed sub nom. Agustin v. Searls,* No. 20-3712, 2022 WL 15985214 (2d Cir. Aug. 26, 2022).

15. Petitioner is currently detained at Buffalo Federal Detention Facility located at 4250 Federal Drive, Batavia, NY 14020, thus he is physically present within the district.

16. The place of employment of Respondent Freden is also located within this District, at 4250 Federal Drive, Batavia, NY. *See Braden v. 30th Judicial Circuit*, 410 U.S. 484, 493–94 (1973) (detailing traditional venue factors).

## EXHAUSTION

17. No statutory exhaustion requirement applies to Petitioner's claims of unlawful detention. *See Abdi v. Nielsen*, 287 F. Supp. 3d 327, 341 (W.D.N.Y. 2018).

18. Exhaustion does not apply in cases such as this where the petitioner "has raised a substantial constitutional question." *Blandon v. Barr*, 434 F. Supp. 3d 30, 37 (W.D.N.Y. 2020) (citing *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992)).

19. Nor is further action with the agency necessary when pursuing administrative remedies would be futile or the agency has predetermined a dispositive issue. *See, e.g., Abdi*, 287 F. Supp. 3d at 341; *Alfaro v. Barr*, 426 F. Supp. 3d 6, 13 (W.D.N.Y. 2019).

20. To the extent that prudential exhaustion applies, Petitioner's statutory and constitutional claims meet all exceptions to that doctrine, including those based on futility, substantial constitutional questions, irreparable injury, and lack of "genuine opportunity for adequate relief." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

21. Exhaustion would be futile and provide no genuine opportunity for meaningful relief here because the agency, through the Board of Immigration Appeals ("BIA"), has repeatedly

held that the burden of proof in custody proceedings under § 1226(a) lies with the detainee. *See Matter of R-A-V-P-*, 27 I&N Dec. 803, 804 (BIA 2020) ("The respondent's assertion that the DHS should bear the burden to demonstrate that he is a flight risk by clear and convincing evidence lacks merit because *we have clearly held* that section [1226(a)] places the burden of proof on the alien to show that he merits release on bond." (emphasis added)); *Matter of Fatahi*, 26 I&N Dec. 791, 795 n.3 (BIA 2016) ("We have consistently held that aliens have the burden to establish eligibility for bond while proceedings are pending."); *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (reiterating that the burden in a § 1226(a) bond hearing "is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond."); *see also Velasco Lopez v. Decker*, No. 19-cv-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019), *aff'd,* 978 F.3d 842 (2d Cir. 2020) (holding that petitioner challenging burden allocation in § 1226(a) bond hearing was "excused from the prudential exhaustion requirement because any appeal of the constitutional issues presented by Petitioner in this case would be futile.").

22.    Indeed, the immigration court and BIA lack jurisdiction to entertain any constitutional challenge and have specifically found that they lack jurisdiction to consider the constitutional challenge at issue here. *See Arango-Aradondo v. INS*, 13 F.3d 610, 614 (2d Cir. 1994); *Matter of Valdovinos*, 18 I&N Dec. 343, 345–46 (BIA 1982) (disclaiming jurisdiction to rule on constitutionality of immigration statute). The BIA "does not have the authority to entertain constitutional challenges to the statutes and regulations [it] administers." *Matter of R-A-V-P-*, 27 I&N Dec. at 804 n.2 (specifically addressing a constitutional challenge to the burden of proof in immigration bond hearings).

23.    To the extent exhaustion applies, Petitioner has sufficiently exhausted his administrative remedies. He appealed the IJ's April 13, 2022 bond denial to the BIA, which granted the appeal on September 26, 2022. *See* Ex. A, IJ Bond Denial, April 13, 2022; Ex. B., BIA Bond

Decision, September 26, 2022. The IJ subsequently reaffirmed the bond denial, which the BIA upheld in a one-line decision. *See* Ex. C, IJ Bond Denial, March 3, 2023; Ex. D, BIA Bond Decision September 28, 2023.

24.     In addition, Mr. Molina has submitted multiple release requests directly to ICE, none of which ICE has approved. Mr. Molina submitted a release request on December 6, 2023, upon his transfer from the Pine Prairie facility, which ICE denied on December 12, 2023, vaguely citing the initial discredited charges against Mr. Molina without further analysis. Mr. Molina again submitted a release request on May 14, 2024, citing, among other things, his grants of Withholding of Removal and protection under the CAT. This recent request remains pending. Accordingly, absent action by this Court, he has no remedy.

## STATEMENT OF FACTS

25.     Mr. Molina is a 38-year-old Honduran man who entered the United States without inspection in 2007 and has not left since. In the United States, Mr. Molina reunited with his now-deceased father, U.S. citizen stepmother, and multiple siblings. Over the following years, he cared for his father during his fatal fight with cancer, worked consistently in construction, and became a leader in his local church. In 2017, Mr. Molina also became the father of a U.S. citizen daughter.

**A.     Mr. Molina has already once been granted immigration relief by the IJ, and his proceedings are now pending before the BIA.**

26.     Mr. Molina was served with a Notice to Appear by the Department of Homeland Security on November 16, 2021. On March 1, 2022, the Immigration Court denied Mr. Molina's Motion to Terminate and sustained the charge of removability. On January 31, 2022, Mr. Molina filed an application for asylum, withholding of removal and protection under the Convention Against Torture ("CAT").

27.    Mr. Molina's claim was premised on threats and attacks he suffered in Honduras from a cousin, who tried to maim, torture and kill Mr. Molina because his sister had refused the cousin's romantic advances, and the cousin believed he was entitled to the family's property. The cousin tried to kill Mr. Molina on multiple occasions and also attacked two of Mr. Molina's brothers, stabbing them on separate occasions and causing severe injuries to both. Other members of the Molina family experienced threats and severe physical harm as well. Despite this consistent pattern of threats and violence, and repeatedly reporting the cousin's conduct to police, the cousin's conduct went unprosecuted and unpunished. The cousin continues to threaten family members who are left in Honduras, and there is nowhere in Honduras that Mr. Molina could live safe from the threat of this cousin, particularly as he and his family are members of the Lenca community, an indigenous group that faces severe discrimination.

28.    After several hearings were held in connection with that application, on September 20, 2022, the Immigration Court denied all applications for relief. Mr. Molina timely appealed this decision with the Board of Immigration Appeals ("BIA") on October 18, 2022.

29.    On June 21, 2023, the BIA issued a decision remanding the record back to the Immigration Court for further consideration of Mr. Molina's claims for withholding of removal and protection under CAT. Specifically, the BIA found that Mr. Molina's criminal history did not bar his eligibility for withholding of removal and remanded for further fact finding on specific elements of the withholding and CAT claims.

30.    On October 27, 2023, the Court granted Mr. Molina withholding of removal and protection under the CAT. The Immigration Court found that he had been persecuted by the cousin on account of an animus against his family, which was a cognizable social group for purposes of withholding of removal. The Immigration Court further found that based on the record evidence the government of Honduras was unable and unwilling to protect him and that it was not reasonable

to expect him to relocate in Honduras, thereby meriting withholding of removal. The Immigration Court further found that he was likely to face torture but that the police and government officials would be willfully blind to that torture, thereby meriting relief under the CAT.

31.     DHS appealed this decision on November 20, 2023. On June 28, 2024, the BIA issued a decision remanding the record back to the Court for further fact-finding on three discrete legal issues: the cognizability under immigration law of Mr. Molina's family-based claim; further analysis that he cannot relocate to another area of Honduras and face a lower risk of persecution; and for purposes of the CAT that he cannot relocate to another part of Honduras to avoid the probability of torture. The parties briefed those issues before the Immigration Court on July 9, 2024. The case remains pending a decision from the IJ, who has not yet issued a decision. In case of a negative decision, Mr. Molina may appeal to the BIA, and possibly to the Second Circuit.

**B.     Mr. Molina has a single criminal conviction for which ICE charged him as removable.**

32.     After he fled Honduras, Mr. Molina lived in the United States without incident for more than a decade. *See* Ex. E (rap sheet).

33.     On November 5, 2018, however, he was arrested based on an accusation that he sexually abused the minor daughter (hereinafter "complainant") of his then partner. On March 18, 2019, he was indicted for violations of New York Penal Law ("NYPL") § 130.75, course of sexual conduct against a child in the first degree, and NYPL § 260.10(1), endangering the welfare of a child.

34.     Mr. Molina maintained his innocence, refused all plea offers, and proceeded towards trial.

35.     Prior to trial, the Assistant District Attorney ("ADA") in charge of Mr. Molina's case made a number of disclosures to Mr. Molina's criminal counsel pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). These disclosures included that the complainant had been sexually

abused by family members in Honduras before she immigrated to the U.S., that she had displayed inappropriate behavior while in immigration custody shortly after entering the U.S. by initiating physical contact with male officers and telling one that he "looked good," and that she made inconsistent statements during interviews with the ADA. The ADA also provided criminal counsel with immigration records corroborating these facts. One week before trial, referring to statements by the complainant, the ADA wrote in an email to criminal counsel: "I don't know what to believe."

36.    Rather than proceed to trial, the ADA offered Mr. Molina a plea to the lower charge on the indictment, NYPL § 260.10, endangering the welfare of a child (a class "A" misdemeanor), with a non-carceral sentence.

37.    Mr. Molina accepted this offer and pleaded guilty to NYPL § 260.10(1) on November 5, 2021. On the record, the prosecutor dismissed the first count of the indictment, sexual conduct against a child, pursuant to New York Criminal Procedure § 210.21(1)(h), stating: "we do not have the evidence to go forward on the course one charge as there exists a legal impediment." The judge sentenced Mr. Molina to time served and three years' probation.

38.    After his sentence, Mr. Molina reported to his probation officer and began complying with the conditions of his probation.

39.    Shortly after his sentence, on November 16, 2021, ICE arrested Mr. Molina near his home in Valley Stream, New York, and detained him at the Orange County Jail in Goshen, New York.

40.    ICE charged Mr. Molina as removable from the United States under 8 U.S.C. § 1182(a)(6)(A)(i) (present without admission or parole). *See* Ex. F (notice to appear).

**C. The IJ has twice erroneously denied Mr. Molina bond, despite copious evidence of the lack of danger or flight risk, at hearings where Mr. Molina bore the burden of proof.**

41. On March 1, 2022, the Immigration Court held its first bond hearing under 8 U.S.C. § 1226(a).

42. In support of his bond request, Mr. Molina presented letters of support from his stepmother, sister, brother, sister-in-law, pastor, employers, and other community members.

43. Mr. Molina also provided extensive documentation from his criminal case, including the criminal complaints, indictment, certificate of disposition, plea and sentencing minutes, the affidavit from criminal counsel explaining the *Brady* disclosures, emails between criminal counsel and the ADA discussing the *Brady* disclosures, and the complainant's immigration records discussing her history of abuse in Honduras and inappropriate behavior in immigration custody. ICE did not submit any evidence.

44. Finally, Mr. Molina testified under oath at his bond hearing that he never sexually abused the complainant and pled guilty to endangering her welfare only because he had spanked her one time (which was consistent with his plea allocution that he "touch[ed] or grab[bed]" the complainant "without her consent" on one occasion).

45. The IJ denied bond in an oral decision and later issued a written decision. *See* Ex. A (IJ bond decision dated 4/13/22). The IJ held that Mr. Molina carried the burden to prove he was not a danger to the community and that he failed to meet this burden because he submitted insufficient documentation to disprove the abuse allegation. *Id.* The IJ also did not consider whether any danger presented by Mr. Molina could be mitigated through the imposition of alternatives to detention. *Id.*

46. Mr. Molina appealed this decision to the Board of Immigration Appeals ("BIA") on March 29, 2022. The BIA rendered a decision on September 26, 2022, reversing the IJ's

dangerousness finding and remanding the case back to the IJ to reassess Mr. Molina's dangerousness. *See* Ex. B (BIA decision dated 9/26/22). Specifically, the BIA found that it was improper for the court to consider dropped charges considering the exculpatory *Brady* evidence in Mr. Molina's case and that specific findings regarding specific corroborative evidence was necessary, and that therefore a reassessment was needed. *Id.*

47.    The IJ held a second custody redetermination hearing on February 14, 2023. In support of this second bond request, Mr. Molina submitted additional reports from the criminal prosecution including the sexual assessment report and forensic report that had been prepared for the prosecution, which noted no signs of physical penetration or evidence of semen or saliva recovered from the complaining witness. In addition, Mr. Molina submitted a report from a medical expert that reviewed the underlying case material and evidence and concluded to a reasonable degree of medical certainty that the allegations of sexual abuse were not consistent with the medical evidence. In addition, Mr. Molina again resubmitted the extensive documentation from his criminal case, including the criminal complaints, indictment, certificate of disposition, plea and sentencing minutes, the affidavit from criminal counsel explaining the *Brady* disclosures, emails between criminal counsel and the ADA discussing the *Brady* disclosures, and the complainant's immigration records discussing her history of abuse in Honduras and inappropriate behavior in immigration custody. Once again, the Government failed to file any evidence of their own.

48.    On March 3, 2023, the IJ issued a written decision again finding that Mr. Molina failed to meet his burden to show he was not a danger to the community. *See* Ex. C (IJ bond decision dated 3/3/23). The IJ ignored the evidence that no sexual abuse had taken place and also discredited evidence that Mr. Molina's plea agreement to endangering the welfare of a child was predicated on an instance of spanking. Instead, in his view and selective reading of New York cases, the IJ believed that Mr. Molina must have done something more, even though there was no

13

support for this preposition in the record.

49.     Mr. Molina appealed this decision to the BIA on March 31, 2023. On September 28, 2023, the BIA issued a one sentenced decision affirming the IJ's decision without opinion, deeming it the final agency determination. *See* Ex. D.

**D.     Mr. Molina has been detained in jail-like conditions for nearly three years.**

50.     As discussed above, ICE detained Mr. Molina on November 16, 2021, holding him at the Orange County Jail located in Goshen, New York. On July 25, 2022, Mr. Molina was transferred to the Adams County Correctional Center in Natchez, Mississippi.  On March 16, 2023, Mr. Molina was transferred to the Pine Prairie Detention Facility in Pine Prairie, Louisiana. On December 22, 2023, Mr. Molina was transferred to the Buffalo (Batavia) Service Processing Center at the Buffalo Federal Detention Facility in Batavia, New York, where he remains detained today.

51.     Mr. Molina's transfer from Pine Prairie Detention facility was particularly traumatic. He was flown from Alexandria, Virginia to Newark, New Jersey, from where he was driven for 5 hours to the Moshannon Valley Detention Center in Pennsylvania. During this time, he was unable to eat or use the bathroom and was shackled both at his feet and hands. After spending two days at Moshannon, he was then transferred to Batavia via bus, where he was once again shackled by the hands and feet throughout the 4-hour drive.

52.     Mr. Molina is currently detained at Batavia, which is an ICE-operated federal immigration detention facility. The conditions of his confinement are not meaningfully different from a penal institution for criminal detention. *See* Ex. G (Petitioner's Complaint to DHS Office of Civil Rights and Civil Liberties ("CRCL"), et al., February 16, 2024). His movement is restricted, and he has limited access to the internet and calls to family and counsel, no access to a

cellphone, and he is detained far away from his family and counsel. *Id*. Due to the remote location ICE has detained him, neither his family nor counsel has been able to travel to visit him in person. Mr. Molina is furthermore currently experiencing conditions tantamount to solitary confinement. He is confined to his cell for 18 to 19 hours a day. *Id.* He is also experiencing unsanitary conditions given the limited toilet and shower facilities. And he has also been denied an adequate wellness diet for his prediabetic condition. Officers in Batavia routinely refuse to address the concerns and issues expressed by detainees like Mr. Molina. *Id.*

53.     In light of these conditions, the Center for Constitutional Rights, a nonprofit legal services organization, filed a complaint on Mr. Molina's behalf with the Office for Civil Rights and Civil Liberties of DHS ("CRCL"), the Office of the Inspector General of DHS, and Office of the Immigration Detention Ombudsman on February 16, 2024, detailing the above conditions and additional instances of the many failures and abuses perpetrated by staff relating their interactions with detainees and responses to medical emergencies. *See* Ex. G. The complaint also highlights Mr. Molina's isolation in detention and the increased anxiety, depression and auditory hallucinations he is experiencing because he spends the vast majority of the day detained in a locked cell. *Id.*

54.     Mr. Molina remains detained despite previously winning relief from the IJ, who found it is more likely than not that he will be persecuted if deported to Honduras. He is likely to remain detained for many additional months and years, no matter what the IJ now decides, given that both parties have a right to again appeal to the BIA. Mr. Molina also has the right to file a petition for review of any adverse decision to the Second Circuit. Thus Mr. Molina's detention—including his suffering and the violation of his constitutional rights—will continue indefinitely absent intervention from this Court.

## LEGAL BACKGROUND

**A.     Statutory Basis for Mr. Molina's Detention.**

55.     Mr. Molina is detained pursuant to 8 U.S.C. § 1226(a), which permits but does not require the detention of noncitizens by ICE during the pendency of their immigration proceedings. As relevant here, Section 1226(a) provides that the Attorney General may "detain the arrested alien" or "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. § 1226(a)(1)–(2).

56.     If ICE orders detention, the noncitizen may ask an IJ to review ICE's custody decision *de novo* at a custody hearing. *See id.*; 8 C.F.R. §§ 1003.19(2), 1236.1(d)(1). At that hearing, the IJ evaluates whether flight risk or dangerousness justifies continued detention.

**B.     Since 1999, the BIA has interpreted 8 U.S.C. § 1226(a) to place the burden on proof at a bond hearing on noncitizens.**

57.     For nearly fifty years after the enactment of the INA's detention statute, the Executive Branch interpreted section 1226(a) to require the Government to carry the burden to justify detention at custody hearings. *See Velasco Lopez*, 978 F.3d at 848 ("[U]ntil the early 1990s, the Attorney General exercised his discretion with a presumption in favor of liberty during the pendency of removal proceedings"); *Matter of Patel*, 15 I&N Dec. 666, 666 (BIA 1976) ("[G]enerally, an alien is not and should not be detained or required to post bond except on a finding that he is a threat to the national security, or that he is a poor bail risk.").

58.     Although Congress re-codified the detention statute in 1996, the only substantive textual change raised the minimum bail amount to $1,500. *Compare* 8 U.S.C. § 1226(a) with 8 U.S.C. § 1252(a)(1) (1995). Notably, Congress created a new mandatory-detention-provision, 8 U.S.C. § 1226(c), but did not disturb the longstanding presumption of release for noncitizens

eligible for bond hearings under section 1226(a).

59.     In 1999, however, the BIA reversed decades of precedent and began requiring that discretionarily detained individuals "establish to the satisfaction of the Immigration Judge that he or she does not present a danger to property or persons." *Matter of Adeniji*, 22 I&N Dec. 1102, 1102 (BIA 1999). The BIA's sole support for this drastic change in policy is a 1999 regulation that created a presumption of detention in ICE's initial custody determination. *Id.* at 1112–13 (citing 8 C.F.R. § 236.1(c)(2)–(8)). This standard has been consistently affirmed by the BIA. *See Matter of Guerra*, 24 I&N Dec 37, 40 (BIA 2006); *Matter of Urena*, 25 I&N Dec. 140, 141 (B.I.A. 2009); *Matter of R-A-V-P*, 27 I&N Dec. 803, 807 (BIA 2020).

60.     However, by its plain text this regulation "applies only to the initial custody determination made by the arresting officer and not to IJs in bond hearings." *Velasco Lopez*, 978 F.3d at 849. There is no regulation regarding the burden of proof that applies to immigration judges. *See id.*

61.     The result is detention as the default. The detained noncitizen shoulders the burden of proving two negatives—that they pose neither a danger nor flight risk—to be released. Those who cannot meet this burden suffer months, if not years, of detention pending their removal proceedings. *See Velasco Lopez*, 978 F.3d at 852 (noting detention under Section 1226(a) is often prolonged).

## C.     Due process requires the Government to bear the burden of justifying civil immigration detention at a bond hearing pursuant to 8 U.S.C. § 1226(a).

62.     "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Due process requires "adequate procedural protections" to ensure that the Government's asserted justification for physical confinement "outweighs the individual's

constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (internal quotation marks omitted). In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention—to mitigate the risks of danger to the community and to prevent flight. *Demore*, 538 U.S. at 528.

63. The Supreme Court has repeatedly recognized that civil detention must be carefully limited to avoid due process concerns. *See, e.g.*, *Kansas v. Hendricks*, 521 U.S. 346, 368 (1997) (upholding involuntary civil commitment of certain sex offenders but requiring "strict procedural safeguards" including a right to a jury trial and proof beyond a reasonable doubt); *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) ("[D]ue process places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." (citation and quotation marks omitted)); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.").

64. Given the gravity of the liberty deprivation when the Government preventively detains individuals, due process requires the jailers to bear the burden of proof to justify that detention. *See e.g.*, *Salerno*, 481 U.S. at 751 (affirming legality of pre-trial detention where burden of proof was on the Government); *Foucha*, 504 U.S. at 81-82, 86 (holding unconstitutional a state civil commitment "statute that place[d] the burden on the detainee to prove that he is not dangerous"). It is improper to ask an individual to "share equally with society the risk of error" where the individual's interest is of "such weight and gravity." *Addington*, 441 U.S. at 427.

18

65.     Moreover, the Government must meet a heightened standard of proof and establish by clear and convincing evidence that its interest in preventive detention outweighs an "individual's strong interest in liberty." *Salerno*, 481 U.S. at 751. "Increasing the burden of proof is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered." *Addington*, 441 U.S. at 427. In *Addington*, the Supreme Court concluded that the state's use of civil detention to protect society from an allegedly dangerous individual with mental illness could not outweigh his right to liberty unless the state showed by at least clear and convincing evidence that detention was necessary. *Id.* at 433; *see also Argueta Anariba v. Shanahan*, No. 16-cv-1928 (KBF), 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017) (it "is particularly important that the Government be held to the 'clear and convincing' burden of proof in the immigration detention context because civil removal proceedings, unlike criminal proceedings, 'are nonpunitive in purpose and effect.'" (*quoting Zadvydas*, 533 U.S. at 691)).

66.     In *Velasco Lopez v. Decker,* the Second Circuit considered the fifteen-month detention of a noncitizen who had twice been denied release following bond hearings in which he bore the burden to prove by clear and convincing evidence that he was neither dangerous nor a flight risk. 978 F.3d at 847. The Circuit described that, under current BIA precedent, "the Government need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings." *Id.* at 849. In evaluating whether this was sufficient to protect a detained non-citizen's liberty interests under the Fifth Amendment, the Circuit applied the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), weighing (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including

19

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 851.[1]

67.     Weighing these factors, the Second Circuit first found the private interest to be "on any calculus, substantial," observing that the petitioner "was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours. The use of a cell phone was prohibited, and he had no access to the internet or email and limited access to the telephone." *Id.* at 851-52. Second, the Court found that the procedures currently in effect "markedly increased the risk of error," because the IJ was empowered to draw adverse inferences against him in the face of any evidentiary gaps, creating a situation where the petitioner "was neither a flight risk nor a danger to the community but was unable to prove that was the case." *Id.* at 852-53. Third, the Court held that even the Government's interest supported "shifting the burden of proof to the Government to justify continued detention" because the Government had an interest in "minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* at 854. Finally, the *Velasco Lopez* court made clear that as a result of the due process analysis in that specific case, which included fifteen months of detention, the Government should bear the burden of demonstrating that the petitioner was a flight risk or danger to the community by "clear and convincing evidence." *Id*. at 855-57.

68.     Before and after *Velasco Lopez*, the overwhelming majority of courts in this Circuit have found that placing the burden of proof on noncitizens at § 1226(a) bond hearings violates due process regardless of the length of detention. *See, e.g.*, *Santiago Franco*, 2021 WL 9463174, at *3 (granting burden-shifted bond hearing under § 1226(a) after 7 months; *Ogunmola v. Barr*, No.

---

[1] The Second Circuit recently reiterated that the *Mathews* test is appropriate in evaluating the process due to people in immigration detention. *See Black v. Decker*, 103 F.4th 133, 147-48 (2d Cir. 2024).

6:19-CV-06742 EAW, 2020 WL 13554804, at *5 (W.D.N.Y. Apr. 29, 2020); *Rajesh v. Barr*, 420

F. Supp. 3d 78 (W.D.N.Y. 2019); *Reyes v. King*, No. 19 CIV. 8674 (KPF), 2021 WL 3727614, at

*7 n.7 (S.D.N.Y. Aug. 20, 2021) (agreeing with the "'overwhelming majority of courts' that have

found that the Due Process Clause of the Fifth Amendment requires" the Government to bear the

burden of demonstrating by clear and convincing evidence that detention is justified" and refusing

to alter the analysis in light of *Velasco Lopez*); *Banegas v. Decker*, No. 21-CV-2359 (VEC), 2021

WL 1852000, at *3 (S.D.N.Y. May 7, 2021) ("[N]either the Circuit's decision in *Velasco Lopez*

nor any other binding appellate authority overrules the 'overwhelming consensus' of courts in this

District that the Due Process Clause of the Fifth Amendment requires the Government to bear the

burden . . . even absent 'prolonged detention.'"); *Jimenez v. Decker,* No. 21-CV-880 (VSB), 2021

WL 826752, at *8, 11 (S.D.N.Y. Mar. 3, 2021) (rejecting the Government's argument that *Velasco*

*Lopez* only authorized shifting the burden with prolonged detention and applying the *Mathews*

factors); *Quintanilla v. Decker*, No. 21 CIV. 417 (GBD), 2021 WL 707062, at *3 (S.D.N.Y. Feb.

22, 2021) (finding that *Velasco Lopez* does not disturb the "'overwhelming consensus of judges in

this district' in concluding that the Government should bear the burden to deny liberty at any

Section 1226(a) bond hearing, regardless of the noncitizen's length of detention"); *Lopez Cano v.*

*Decker*, No. 22-cv-7428 (AKH), 2022 WL 17584156, at *2 (S.D.N.Y. Dec. 12, 2022) (applying

*Mathews* and ordering constitutionally adequate bond hearing while noting that "the right to a

procedurally proper bond hearing does not depend on the length of a petitioner's detention").

     69.    Where, like here, detention exceeds the 15 months considered in *Velasco Lopez*,

courts have routinely applied *Velasco Lopez* and required the Government to bear the burden of

proving by clear and convincing evidence that the detainee is either dangerous or a flight risk to

justify detention. *See, e.g.*, *P.M. v. Joyce*, No. 22-cv-6321 (VEC), 2023 WL 2401458, at *3

(S.D.N.Y. Mar. 8, 2023) (applying *Mathews* and ordering constitutionally adequate bond hearing

after eighteen-month detention); *Fajardo v. Decker*, No. 22-cv-3014 (PAE), 2022 WL 17414471, at *10 (S.D.N.Y. Dec. 5, 2022) (applying *Mathews* analysis in *Velasco Lopez* and ordering constitutionally adequate bond hearing after fifteen-month detention); *O.F.C. v. Decker*, No. 22-cv-2255 (JPC), 2022 WL 4448728, at *9 (S.D.N.Y. Sept. 12, 2022) (holding that the *Mathews* analysis conducted in *Velasco Lopez* "directly controls" given materially identical facts and ordering constitutionally adequate bond hearing after over fifteen-month detention).

70.     Each of the *Mathews* factors weighs in favor of reversing the current burden allocation in § 1226(a) bond hearings irrespective of length of detention. First, the "importance and fundamental nature" of an individual's liberty interest is well-established. *See Salerno*, 481 U.S. at 750. Unnecessarily detaining an individual in a local criminal jail in purportedly civil immigration detention, separating him from his family, work, and community for weeks, months, or even longer, is a severe and irreparable injury. *Linares Martinez*, 2018 WL 5023946 at *3 (finding "the individual interest at stake is without doubt particularly important" for immigration detainees "who can face years of detention before resolution of their immigration proceedings" (*citing Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011)). In fact, although it is difficult to quantify the value of loss of liberty in the form of wrongful incarceration, courts routinely approve compensatory damage awards of "$1 million per year of wrongful incarceration" or approximately $2,739 per day. *Restivo v. Hessemann*, 846 F.3d 547, 588 (2d Cir. 2017) (upholding compensatory damages award, finding it "neither shocks the conscience nor materially deviates from reasonable compensation. Indeed, the jury award is in line with other approved awards in wrongful conviction cases").

71.     Second, the risk that a noncitizen's freedom will be erroneously deprived is significant under current procedures. All Section 1226(a) detainees who seek bond must provide evidence to the Immigration Judge addressing a number of specified factors. *See Guerra*, 24 I&N

Dec. at 40 (listing required evidence including criminal and immigration records, address history, length of residence, and family ties). Requiring detained noncitizens to obtain this evidence—particularly records from other Government agencies—is extremely onerous. Barriers such as indigence, language and cultural barriers, limited education, and mental health issues often associated with past persecution or abuse complicate detainees' ability to obtain such records.[2] Moreover, the mere fact of detention, often in county jails or for-profit prisons located miles from an individual's community, presents a significant obstacle to accessing the outside world. Communication with family and counsel is difficult and at times prohibitively expensive.[3] *See Moncrieffe v. Holder*, 569 U.S. 184, 201 (2013) (noting that immigrant detainees "have little ability to collect evidence"). As such, there is a significant risk of erroneous denials of bond due to a noncitizen's inability to provide sufficient proof to satisfy the IJ.

72.     The ability of non-citizens detained pursuant to Secton 1226(a) to request release from ICE does not mitigate the risk of erroneous deprivation. Release requests adjudicated as a matter of discretion by ICE, which is "not a neutral decision maker." *Kabba v. Barr*, 403 F. Supp. 3d 180, 189 (W.D.N.Y. 2019) (citing *Marshall v. Jericho, Inc.*, 446 U.S. 238, 242 (1980) (a non-citizen must be afforded a hearing by "an impartial and disinterested tribunal.").

---

[2] Richard L. Abel, *Practicing Immigration Law in Filene's Basement*, 84 N.C. L. REV. 1449, 1488 (2006) (noting that many immigrants are "unusually vulnerable: poor, deeply in debt, uneducated, ignorant of language and culture . . . ."); Stefanie Grant, *Immigration Detention: Some Issues of Inequality*, EQUAL RIGHTS REV. 69, 74 (2011) (stating that detained immigrants are vulnerable due to past torture and persecution); Alina Das, *Immigration Detention: Information Gaps and Institutional Barriers to Reform*, 80 U. CHI. L. REV. 137, 157-58 (2013) (detailing how detention and lack of government-appointed counsel renders information acquisition difficult for noncitizens); Max Siegelbaum, *Detention Centers, Bracing for Flood of New Arrivals, Are 'Set Up to Fail' Immigrants with Mental Illness*, STAT (Dec. 16, 2016), https://www.statnews.com/2016/12/16/immigrants-mental-health/ (describing how immigrants are vulnerable due to mental illness).

[3] Amnesty International, *Jailed Without Justice: Immigration Detention in the USA* 29-36 (2009), http://www.amnestyusa.org/pdfs/JailedWithoutJustice.pdf; *Detention By The Numbers*, FREEDOM FOR IMMIGRANTS, https://www.freedomforimmigrants.org/history-of-freedom-for-immigrants-hotline (last visited Dec. 14, 2021).

73.     Finally, the proposed procedures—namely, that the Government bear the burden of establishing by clear and convincing evidence that a noncitizen is a danger or flight risk—do not meaningfully prejudice the Government's interest in mitigating danger and risk of flight during proceedings. *See Zadvydas*, 533 U.S. at 690. The Government is much better positioned to gather this evidence. In fact, it already regularly obtains such information as it must establish that noncitizens are deportable by clear and convincing evidence. *See* 8 U.S.C. § 1229a(c)(3) (outlining criminal records permissible to establish deportability); *see also Velasco Lopez*, 978 F.3d at 855 ("ICE and DHS can access the records of other federal agencies and local law enforcement and routinely do so for purposes of the merits proceedings"); *Linares Martinez*, 2018 WL 5023946, at *3 ("[F]or a number of reasons, the Government is generally in a better position than a detained alien to gather and present evidence relevant to the bond determination.").

74.     Following *Velasco Lopez*, Mr. Molina's prolonged detention further demonstrates the gravity of the liberty interest at stake and the necessity of holding the Government to a higher burden. *See Velasco Lopez*, 978 F.3d at 853 ("'[A]s the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention.") (quoting *Zadvydas*, 533 U.S. at 701).

75.     Mr. Molina has been detained for over 32 months—nearly three years—despite the fact he has previously been found to face persecution if returned to Honduras, and despite significant evidence that the sexual abuse he was accused of in his sole arrest in the United States never occurred. Mr. Molina's detention is prolonged on any measure, and he should receive a constitutionally adequate bond hearing to determine whether his ongoing detention is justified.

76.     Moreover, to comport with due process, the IJ must account for a petitioner's ability to pay a bond and alternatives to detention in adjudicating the petitioner's bond hearing. *See, e.g.*, *Onosamba-Ohindo v. Barr*, 483 F.Supp.3d 159 (W.D.N.Y. 2020) (granting preliminary injunction

24

on behalf of a class of people in Section 1226(a) detention at Batavia and ordering the Government bear the burden of proof and the immigration court consider alternative conditions of release and ability to pay when setting bond at the initial custody hearing); *Santiago Franco*, 2021 WL 9463174, at *5 ("If the posting of a monetary bond is used as a condition of supervision, Santiago Franco's ability to pay must be considered, and the bond amount must be no higher than is reasonably necessary to compel his attendance at future immigration proceedings."); *Ramos v. Barr*, No. 6:20-CV-06622 EAW, 2020 WL 13554813, at *4 (W.D.N.Y. Dec. 29, 2020) (finding an individual detained for 20 months "must be afforded a bond hearing where the government bears the burden to prove by clear and convincing evidence that Petitioner is a flight risk or danger, and at which the IJ must consider ability to pay and alternative conditions of release in setting bond"); *Hernandez*, 2018 WL 3579108, at *12 (holding that the Constitution compels "consideration of ability to pay and alternatives to detention" at a bond hearing).

77.     Indeed, "refusing to consider financial circumstances would be inexplicable, as the amount likely to secure the appearance of an indigent person obviously differs from the amount necessary to secure the appearance of a wealthy person." *Id.* (internal quotation marks and citations omitted).

78.     Courts have reached similar conclusions about alternatives to detention. *See, e.g.*, *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241 (W.D.N.Y. 2019) (ordering petitioner's release on supervision where "there [was] absolutely no doubt that [the IJ] failed to consider any plausible, less restrictive alternative to continued detention as required by this Court's prior order."); *Hernandez-Aviles v. Decker*, No. 20-CV-7636 (ER), 2020 WL 5836519, at *2 (S.D.N.Y. Oct. 1, 2020) ("Given that the Supreme Court has upheld 'preventive detention based on dangerousness *only* when limited to specially dangerous individuals and subject to strong procedural protections,' not considering alternatives to detention or ability to pay a bond would

run afoul of the protections afforded by the Due Process Clause." (citation omitted)); *Roman v. Decker*, 2020 WL 5743522, at *4 (S.D.N.Y. 2021). ("[A]s an overwhelming number of courts in this district has found, *procedural* due process requires that an adjudicator take into account the detainee's ability to pay and whether any alternative conditions of release may further the Government's legitimate interest in continued detention prior to setting a bond."); *Joseph v. Decker*, 2018 WL 6075067, at *13 (S.D.N.Y. 2019) (requiring IJ to consider "whether alternatives to detention may [better] serve those purpose[s] [of detention]"); *cf. United States v. Playboy Entm't. Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals"). Thus, due process requires that the IJ consider alternatives to detention in any hearing this Court orders.

## **CLAIMS FOR RELIEF**

### **COUNT ONE**
### **RESPONDENTS' FAILURE TO PROVIDE PETITIONER WITH A CONSTITUTIONALLY ADEQUATE BOND HEARING VIOLATES HIS RIGHT TO PROCEDURAL DUE PROCESS UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

79.     Petitioner realleges and incorporates by reference paragraphs 1-78.

80.     The IJ's decision requiring Mr. Molina to bear the burden of proof in his § 1226(a) bond hearing and failing to consider the suitability of alternatives to detention and ability to pay violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which entitles noncitizens to due process of law in their removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

81.     Specifically, the Due Process Clause "places a heightened burden of proof on the State in civil proceedings in which the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." *Cooper v. Oklahoma*, 517 U.S. 348, 363

26

(1996) (citation and quotation marks omitted). This precludes placing the burden of proof on the noncitizen in civil immigration bond hearings under § 1226(a).

82.    The bond hearings provided to Mr. Molina did not provide sufficient due process protections to guard against his unlawful imprisonment.

**COUNT TWO**
**RESPONDENTS' FAILURE TO PROVIDE PETITIONER WITH A**
**CONSTITUTIONALLY ADEQUATE BOND HEARING VIOLATES THE**
**IMMIGRATION AND NATIONALITY ACT – 8 U.S.C. § 1226(a)**

83.    Petitioner realleges and incorporates by reference paragraphs 1-78.

84.    Requiring Mr. Molina to carry the burden of proof in his bond hearings violates 8 U.S.C. § 1226, which explicitly places the burden of proof on noncitizens with certain criminal convictions in bond hearings held pursuant to § 1226(c)(2), but does not specify who carries the burden of proof in § 1226(a) hearings. *See supra* ¶¶ 43-47.

85.    Where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Nken v. Holder*, 556 U.S. 418, 430 (2009).

86.    The bond hearings provided to Mr. Molina therefore did not comport with the procedures applicable under § 1226(a).

**COUNT THREE**
**RESPONDENTS' FAILURE TO PROVIDE PETITIONER WITH A**
**CONSTITUTIONALLY ADEQUATE BOND HEARING VIOLATES THE**
**ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706(1)-(2)**

87.    Petitioner alleges and incorporates by reference paragraphs 1-78.

88.    The APA provides that "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

89.    The statute further provides that the reviewing court shall "compel agency action

27

unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(A)-(B).

90.     Respondents' failure to provide Mr. Molina with a bond hearing in which the Government bears the burden of proof reflects an arbitrary and capricious interpretation of 8 C.F.R. § 236.1(c) and an unreasoned departure from past precedent. This failure constitutes a final agency action within the meaning of the APA.

91.     Respondents' failure to provide Mr. Molina with a bond hearing in which the Government bears the burden of proof is contrary to 8 U.S.C. § 1226(a), and is therefore arbitrary, capricious, and not in accordance with the law.

92.     Respondents' failure to provide Mr. Molina with a bond hearing in which the Government bears the burden of proof by clear and convincing evidence is a violation of the Due Process Clause, and is therefore not in accordance with law and contrary to constitutional right.

93.     Mr. Molina has no other adequate remedy in court to obtain direct review of the agency actions and omissions challenged here to redress Respondents' failure to provide him with the bond procedures required by due process and the INA.

94.     Respondents' failure to provide Mr. Molina with such a bond hearing has caused and continues to cause him substantial and concrete harm.

95.     Accordingly, Respondents are in violation of the APA. 5 U.S.C. §§ 706(1), (2)(A)-(B).

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Enjoin Respondents from moving the Petitioner from the New York City area while habeas proceedings are pending;

3) Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody on his own recognizance or, in the alternative, ordering Respondents to, within seven days of this Court's order, provide Petitioner with a constitutionally adequate, individualized hearing before an impartial adjudicator; at which the Government must bear the burden of establishing by clear and convincing evidence that continued detention is justified; and in which the adjudicator must meaningfully consider alternatives to detention, such as release on parole supervision or electronic monitoring, and Petitioner's ability to pay if setting a monetary bond; and at which the adjudicator must not give undue weight to unproven allegations of criminal activity, or allow the Government to meet its burden by using the oral or written testimony of Petitioner.[4]

4) Grant any other and further relief that this Court deems just and proper.

Dated: August 15, 2024
Brooklyn, New York

Respectfully submitted,

*/s/ Alexandra Lampert*
Alexandra Lampert, Esq.
Brooklyn Defender Services
177 Livingston Street
Brooklyn, NY 11201
347-977-7701
alampert@bds.org

Dated: August 15, 2024
Buffalo, New York

*/s/ Jillian Nowak*
Jillian Nowak, Esq.

---

[4] The Court may in the alternative conduct a bail hearing where Respondents must prove, by clear and convincing evidence, that Petitioner's ongoing detention is necessary. *See Celestin v. Decker*, No. 17-CV-2419 (RA), Tr. at 13-14 (S.D.N.Y. Apr. 17, 2017) (bench decision) (district court holding bond hearing for immigration habeas petitioner, noting that "[t]he federal courts have inherent authority to admit to bail individuals properly within their jurisdictions, including in the immigration context." (*quoting Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001))).

Prisoners' Legal Services of New York
14 Lafayette Square, Suite 510
Buffalo, New York
716-844-8266
jnowak@plsny.org

*Counsels for Petitioner*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Denny Molina Cantor

**DEFENDANTS**
Joseph Freden, et. al.

**(b)** County of Residence of First Listed Plaintiff    Genesee
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jillian E. Nowak, PLSNY, 14 Lafayette Square, Ste. 510, Buffalo, NY 14203; Tel.: 716-844-8266
Alexandra Lampert, Brooklyn Defender Services, 177 Livingston Street

Attorneys *(If Known)*
U.S. Attorney for the Western District of New York

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question *(U.S. Government Not a Party)*

☒ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | Protection Act ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☒ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | |
| | ☐ 448 Education | ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
22 U.S.C. § 2241
Brief description of cause:
Writ of Habeas Corpus

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE      DOCKET NUMBER

DATE
08/15/2024

SIGNATURE OF ATTORNEY OF RECORD
/s/Jillian E. Nowak

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a)  **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b)  **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c)  **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.  **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.  **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.  **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V.  **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI.  **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

VII.  **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
201 VARICK STREET
NEW YORK, NEW YORK

File No.: A216-557-620

_____

In the Matter of:            :
            :
**MOLINA CANTOR, Denny**     :      **BOND PROCEEDINGS**
            :
The Respondent.         :

_____:

**APPLICATION:**     8 C.F.R. § 1003.19         Custody/Bond

**ON BEHALF OF THE RESPONDENT**         **ON BEHALF OF DHS**
Efthimia Barbagiannis, Esq.                 Assistant Chief Counsel
Brooklyn Defender Services                  Office of the Chief Counsel
156 Pierrepont St.                              201 Varick Street, Room 1130
Brooklyn, New York 11201                  New York, New York 10014

## MEMORANDUM ORDER OF THE IMMIGRATION JUDGE

### I. PROCEDURAL HISTORY

Denny Molina Cantor ("the Respondent") is a male native and citizen of Honduras. *See* Form I-862, Notice to Appear ("NTA"). He entered the United States ("U.S.") at an unknown place on an unknown date. *See id.* On November 16, 2021, the Department of Homeland Security ("DHS") served the Respondent with a NTA, charging him with removability pursuant to the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *See id.* The Respondent was thereafter detained by Immigration and Customs Enforcement ("ICE") at Orange County Jail. Pursuant to a motion for a custody determination hearing submitted by the Respondent on January 31, 2022, the Court conducted a custody determination hearing on March 1, 2022. *See* DAR (March 1, 2022). For the reasons that follow, the Court denied his request for a change in custody status.

### II. EXHIBITS

**Exh. B1:**     The Respondent's Submission of Evidence for Custody Redetermination, Tabs A-W, received February 23, 2022.

EOIR – 1 of 4

A216-557-620

## III.  LEGAL STANDARD AND ANALYSIS

An alien in a custody determination under INA § 236(a) must establish to the satisfaction of the Immigration Judge ("IJ") that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight. *See Matter of Guerra*, 24 I&N Dec. 40 (BIA 2006). An alien who presents a danger to persons or property should not be released during the pendency of proceedings to remove him or her from the United States. *See Matter of Urena*, 25 I&N Dec. 140 (BIA 2009); *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994). Consideration by an IJ of an application or request of a respondent regarding custody or bond under 8 C.F.R. § 1003.19 shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding. *See* 8 C.F.R. § 1003.19(d); *see also Matter of Chirinos,* 16 I&N Dec. 276, 277 (BIA 1977).

In making a custody determination, the Court has broad discretion in what factors to consider. *See Guerra*, 24 I&N Dec. at 40-41.  General criteria for consideration of bond includes a record of appearances in court; employment history; criminal record; pending criminal charges; history of immigration violations; attempts to flee prosecution or authorities; manner of entry; membership in community organizations; and immoral acts of participation in subversive activities. *See id; Matter of Patel*, 15 I&N Dec. 666, 667 (BIA 1976).  An IJ should not release an alien who presents a danger to persons or property during the pendency of his immigration proceedings. *See Urena*, 25 I&N Dec. 140; *Drysdale*, 20 I&N Dec. 815.

In determining whether an alien presents a danger to the community, IJs are not restricted to considering criminal convictions, and may consider any "probative and specific" evidence in the record. *Guerra*, 24 I&N Dec. at 40-41.  As "[t]he question whether an alien poses a danger to the community is broader than determining if the record contains proof of specific acts of past violence or direct evidence of an inclination toward violence," an IJ may rely on circumstantial evidence and a respondent's misrepresentations to determine whether he poses a danger to the community. *Matter of Fatahi*, 26 I&N Dec. 791, 794 (BIA 2016).  Accordingly, even if a respondent has not been convicted of offenses charged in a criminal complaint, unfavorable evidence of conduct, including evidence of criminal activity, is pertinent to the Court regarding whether a respondent poses a danger to the community. *See Matter of Teixeira*, 21 I&N Dec. 316, 321 (BIA 1996) (noting police reports can be considered in matters relating to discretionary relief); *Matter of Thomas,* 21 I&N Dec. 20, 23 (BIA 1995) (noting arrests are pertinent in matters relating to discretionary relief).  Only if a respondent has shown he is not a danger should the Court proceed to determine whether he is a flight risk.  *See Urena*, 25 I&N Dec. at 141 (citing 8 C.F.R. § 1236.1(c)).

### a.  Danger to the Community

Based on his criminal history, the Court finds that the Respondent failed to establish that he does not pose a risk of danger to the community.  On November 5, 2018, the Respondent was arrested and later convicted of endangering the welfare of a child in violation of New York Penal Law ("NYPL") § 260.10(1).  While not resulting in a conviction, the Respondent was also indicted with course of sexual conduct against a child in the first degree in violation of NYPL § 130.75(1)(a).  Exh. B1, Tabs O-Q.  The Respondent ultimately pled guilty to endangering the

2

A216-557-620

welfare of a child in violation of NYPL § 260.10(1) and was sentenced to time served, three years' probation, and a five year Order of Protection. *See* Exh. B1, Tab P.

While the Court acknowledges that the Respondent did not plead guilty to a violation of course of sexual conduct against a child in the first degree pursuant under NYPL § 130.75(1)(a), the Court looks to the underlying circumstances surrounding the Respondent's arrest and conviction. "A person is guilty of course of sexual conduct against a child in the first degree when, over a period of time not less than three months in duration: (a) he or she engages in two or more acts of sexual conduct, which includes at least one act of sexual intercourse, oral sexual conduct, anal sexual conduct or aggravated sexual contact, with a child less than eleven years old […]." NYPL § 130.75(1)(a). The Court considers this offense to be particularly concerning and egregious in nature as it involves sexual misconduct directed toward a child. Ample case law from both the BIA and the Second Circuit have addressed the sexual abuse of minors as a particularly egregious offense, recognizing that children, as a vulnerable population, are in most need of special protections. *See Matthew v. Barr*, 927 F.3d 606 (2d Cir. 2019) (concluding that, with regard to Endangerment of a Child, the BIA has "interpret[ed] the term 'crime of child abuse' broadly to mean any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being."); *see also Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008).

The Court looks to the documents submitted by the Respondent in the evidentiary record, including the complaint and indictment, the certificate of disposition, the attorney affirmation by the Respondent's former criminal defense attorney, the plea and sentencing minutes, the Brady disclosure letters from the Nassau County District Attorney's office, and the ORR/DCS Home Study Report for the victim. *See* Exh. B1, Tabs O-T. The criminal complaints in this case detail the Respondent as having subjected the victim, a 10 year old female, on numerous occasions to the "insert[ion] [of] his erect penis into the victim's mouth, insert[ion] [of] his erect penis into her anus and the defendant performed oral sex on the victim by licking her vagina," among other acts. *See* Exh. B1, Tab T. The Respondent testified that the victim was previously sexually abused by her paternal grandfather in Honduras and was confused due to the victim's struggle with PTSD. *See* DAR (March 1, 2022). The Respondent stated that the only time he touched the victim was to give her a single spanking as discipline on a single occasion. *See id.* The Respondent further testified that he pled guilty to endangering the welfare of a child because he believed he was guilty for spanking the victim on her behind on this one occasion. *Id.* The Respondent's testimony is in direct contrast to the details of the incident outlined in the criminal complaint. *See* Exh. B1, Tab T. The Court further does not find that a single spanking of a child would likely have resulted in the Respondent's guilty plea of endangering the welfare of a child in violation of NYPL § 260.10(1).

Notably, the Respondent failed to provide the Court with the Order of Protection issued by the criminal court. The Respondent further failed to provide the Court with the arresting officer's signed affidavit detailing the incident. Moreover, the Respondent failed to provide the Court with the results of the sexual abuse examination that would have been conducted on the victim. When the Court questioned the Respondent as to why he was unable to produce these documents, the Respondent stated that his criminal defense attorney had the documents. *See* DAR (March 1, 2022). The Court notes, however, that the Respondent provided a letter from his criminal defense

3

attorney, Mr. Richard Langone, and concludes that these missing documents were reasonably available for the Respondent to acquire and submit to the Court. *See* Exh. B1, Tab Q.

The Court therefore has serious concerns over the Respondent's behavior and the significant danger he posed to the community resulting in his arrest and conviction. *See* DAR (March 1, 2022); *see also* Exh. B1, Tabs O-T. The Respondent's failure to take accountability for his actions beyond that of a single spanking of the victim greatly concerns the Court. *Id.* Additionally, while the Respondent testified that he knew there was an Order of Protection issued by the criminal court, he testified that he was unaware that it was issued for a five year period. *See id.* Moreover, the Respondent failed to meet his burden of proof by not providing necessary detailed documents relating to his arrest and conviction. Therefore, the Court finds the Respondent's record indicates that he would pose a danger to the community if he were to be released.

The Court acknowledges that the record contains the Respondent's I-589 Application. *See* Exh. B1, Tab N. The Court further acknowledges that the Respondent submitted numerous letters from family members and friends. *See* Exh. B1, Tabs A-L. Nonetheless, such evidence, while significant to flight risk, generally does not mitigate an alien's dangerousness where the issue is whether the Respondent is a danger to the community. *Matter of Siniauskas*, 27 I&N Dec. 207, 210. Despite that he may have equities in the U.S., the Respondent did not meet his burden of proof to establish that he does not pose a danger if released, the threshold issue in a custody redetermination under INA § 236(a).

### a. Flight Risk

Given that the Court found the Respondent poses a danger to the community, it is not necessary to determine whether he is also a flight risk. *See Urena*, 25 I&N Dec. at 141 (citing 8 C.F.R. § 1236.1(c)).

Accordingly, after a careful review of the record, the following Order is entered:

## ORDER

**IT IS HEREBY ORDERED** that the Respondent's request for a change in custody status be **DENIED.**

_____4/13/22_____
Date

_____
CHARLES CONROY
U.S. Immigration Judge



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Barbagiannis, Efthimia**
**Brooklyn Defender Services**
**156 Pierrepont Street**
**Brooklyn  NY  11201**

**DHS/ICE Office of Chief Counsel - NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

**Name: MOLINA CANTOR, DENNY**          A  216-557-620

**Date of this Notice:**    **9/26/2022**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:

Liebowitz, Ellen C
Malphrus, Garry D.
Petty, Aaron R.

Userteam:  Docket



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

_____
*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**MOLINA CANTOR, DENNY**
**A 216557620**
**ORANGE COUNTY JAIL**
**110 WELLS FARM ROAD**
**GOSHEN NY 10924**

**DHS/ICE Office of Chief Counsel - NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

**Name: MOLINA CANTOR, DENNY**          **A  216-557-620**

**Date of this Notice:    9/26/2022**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:

Liebowitz, Ellen C
Malphrus, Garry D.
Petty, Aaron R.

Userteam:  <u>Docket</u>

NOT FOR PUBLICATION

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Denny MOLINA CANTOR, A216-557-620

Respondent

**FILED**
Sep 26, 2022

ON BEHALF OF RESPONDENT: Efthimia Barbagiannis, Esquire

ON BEHALF OF DHS: Kaylee Trost, Assistant Chief Counsel

IN BOND PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Malphrus, Deputy Chief Appellate Immigration Judge; Petty, Appellate Immigration Judge; Liebowitz, Appellate Immigration Judge

Opinion by Appellate Immigration Judge Petty
Deputy Chief Appellate Immigration Judge Malphrus, see concurring opinion

PETTY, Appellate Immigration Judge

The respondent appeals from the Immigration Judge's bond order dated March 1, 2022, denying a change in custody status. Section 236(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(a). The Immigration Judge issued a bond memorandum explaining his bond decision on April 13, 2022. The Department of Homeland Security ("DHS") opposes the respondent's appeal. The respondent's case will be remanded for further proceedings.

We review findings of fact determined by an Immigration Judge, including credibility findings, under a "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals from decisions of Immigration Judges de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

The respondent was convicted of endangering the welfare of a child in violation of New York Penal Law ("NYPL") § 260.10(1) (IJ at Bond Memo, at 2-3; Exh. Bl). Further, while not resulting in a conviction, the respondent was also arrested and indicted for sexual conduct against a child in the first degree in violation of NYPL § 130.75(l)(a) (IJ at Bond Memo, at 2-3; Exh. Bl). The Immigration Judge denied a change in custody status after determining that the respondent did not establish that his release would not pose a danger to persons or property (IJ Bond Memo, at 2-4). *See* INA § 236(a), 8 U.S.C. § 1226(a). On appeal, the respondent argues that the Immigration Judge erred in his dangerousness finding and erred in ordering that the respondent remained detained (Respondent's Br. at 4-13).

We acknowledge the Immigration Judge's reasoning, and we agree with his assessment that the initial charges asserted against the respondent were very serious, and that sexual crimes against

A216-557-620

children are particularly egregious and that children are a vulnerable population in need of protection (IJ Bond Memo, at 3). However, under the circumstances presented in this case, we conclude that the Immigration Judge placed too much weight to the allegations of sexual assault contained in the criminal complaint. 8 C.F.R. § 1003.1(d)(3)(ii); *Matter of H-L-H- & Z-Y-Z-*, 25 I&N Dec. 209, 212-13 (BIA 2010) (the Board may attribute different weight to evidence in a de novo determination), *rev'd and remanded on other grounds, Huang v. Holder*, 677 F.3d 130 (2d Cir. 2012). The Immigration Judge properly noted that the record contains exculpatory evidence disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and that following the *Brady* disclosures, the initial charges were dropped and respondent pleaded to endangering the welfare of a child, and was sentenced to time served with 3 years of probation, and a 5-year order of protection (IJ Bond Memo, at 3; Exh. Bl, Tab P).

We are hesitant to afford significant evidentiary weight to charges that were dropped following the disclosure of potentially exculpatory *Brady* material. In this case, the *Brady* material suggests that the victim may have been referring to traumatic events she experienced in Honduras, unrelated to the respondent, and suffers from a psychiatric condition that affects her memory and perception (Exh. Bl, at 117-22, 143-70). A charge that is dropped in light of potentially exculpatory evidence, such as the *Brady* material here, is not "probative and specific" evidence of dangerousness. *Matter of Guerra*, 24 I&N Dec. 37, 40-41 (BIA 2006); *see also* 8 C.F.R. § 1236.1(c)(8); *Matter of Adeniji*, 22 I&N Dec. 1102, 1111-13 (BIA 1999); *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009).

Further, we agree with the respondent's arguments related to the limited probative value regarding the lack of the order of protection and the arresting officer's affidavit (IJ Bond Memo, at 3; Respondent's Br. at 9-10). The respondent conceded to the existence of the order of protection (Respondent's Br. at 9; Exh. B1, Tab P), and the arresting officer's affidavit is of limited probative value because the arresting officer was not a witness. Such an affidavit is substantially less useful than the information in the DEA agent's affidavit in *Matter of Guerra*, which set forth various facts directly learned or observed by the agent during a course of a drug trafficking investigation. The Immigration Judge also found that the respondent failed to produce the record of a "sexual abuse examination that would have been conducted on the victim" (IJ Bond Memo, at 3). However, the record does not establish that such an examination had, in fact, been conducted.

In light of the above, we conclude that a remand is necessary for the Immigration Judge to reassess the respondent's dangerousness. In conducting such analysis, the Immigration Judge should consider the above discussions regarding the weight of the dropped charge and the probative value of the missing evidence, and should make specific findings as to whether a sexual abuse examination took place. If such an examination was conducted, the Immigration Judge may take into account the results of that examination, or the absence of the report from the record, in assessing dangerousness. If necessary, the Immigration Judge should then address flight risk. *Matter of Urena,* 25 I&N Dec. at 141 ("Dangerous aliens are properly detained without bond"); *Matter of Drysdale*, 20 I&N Dec. 815, 817 (BIA 1994). We express no opinion as to the ultimate resolution of the respondent's case. *Matter of L-O-G-*, 21 I&N Dec. 413, 422 (BIA 1996).

ORDER: The record is remanded to the Immigration Judge for further proceedings, consistent with the foregoing opinion, and for the entry of a new decision.

A216-557-620

Deputy Chief Appellate Immigration Judge Garry D. Malphrus respectfully concurs in the result only.

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
201 VARICK ST., 5TH FL RM 507
NEW YORK, NY  10014


Brooklyn Defender Services
Dalsimer, Sophie Star
156 Pierrepont Street
Brooklyn, NY  11201


In the matter of              File A 216-557-620       DATE: Mar 6, 2023
MOLINA CANTOR, DENNY


__ Unable to forward - No address provided.
__ Attached is a copy of the decision of the Immigration Judge. This decision
   is final unless an appeal is filed with the Board of Immigration Appeals
   within 30 calendar days of the date of the mailing of this written decision.
   See the enclosed forms and instructions for properly preparing your appeal.
   Your notice of appeal, attached documents, and fee or fee waiver request
   must be mailed to:      Board of Immigration Appeals
                           Office of the Clerk
                           5107 Leesburg Pike, Suite 2000
                           Falls Church, VA 22041
__ Attached is a copy of the decision of the immigration judge as the result
   of your Failure to Appear at your scheduled deportation or removal hearing.
   This decision is final unless a Motion to Reopen is filed in accordance
   with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. §
   1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. §
   1229a(b)(5)(C) in removal proceedings.  If you file a motion to reopen, your
   motion must be filed with this court:
                           IMMIGRATION COURT
                           201 VARICK ST., 5TH FL RM 507
                           NEW YORK, NY  10014
__ Attached is a copy of the decision of the immigration judge relating to a
   Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. §
   1208.31(g)(1), no administrative appeal is available. However, you may file
   a petition for review within 30 days with the appropriate Circuit Court of
   Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.
__ Attached is a copy of the decision of the immigration judge relating to a
   Credible Fear Review. This is a final order. No appeal is available.
__ Other: _____


                              ___B. OTTO_____
                              COURT CLERK
                              IMMIGRATION COURT                    FF

       cc: ASSISTANT CHIEF COUNSEL
           201 VARICK STREET, ROOM 738
           NEW YORK, NY, 10014

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
201 VARICK STREET
NEW YORK, NEW YORK

File No.: A216-557-620

—————————————————————
In the Matter of:                           :
                                            :
**MOLINA CANTOR, Denny**          :          **BOND PROCEEDINGS**
                                            :
The Respondent.                             :
—————————————————————:

**APPLICATION**:       8 C.F.R. § 1003.19         Custody/Bond

**ON BEHALF OF THE RESPONDENT**          **ON BEHALF OF DHS**
Sophie Dalsimer, Esq.                     Assistant Chief Counsel
Brooklyn Defender Services                Office of the Chief Counsel
177 Livingston St. 7th Fl.                201 Varick Street, Room 1130
Brooklyn, New York 11201                  New York, New York 10014

**MEMORANDUM ORDER OF THE IMMIGRATION JUDGE**

## I.   PROCEDURAL HISTORY

Denny Molina Cantor ("the Respondent") is a male native and citizen of Honduras. *See*
Form I-862, Notice to Appear ("NTA"). He entered the United States ("U.S.") at an unknown
place on an unknown date. *See id.* On November 16, 2021, the Department of Homeland Security
("DHS") served the Respondent with a NTA, charging him with removability pursuant to the
Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) as a noncitizen present in the United
States without being admitted or paroled, or who arrived in the United States at any time or place
other than as designated by the Attorney General. *See id.* The Respondent was thereafter detained
by Immigration and Customs Enforcement ("ICE") at Orange County Jail. Pursuant to a motion
for a custody determination hearing submitted by the Respondent on January 31, 2022, the Court
conducted a custody determination hearing on March 1, 2022, where the Court denied the
Respondent bond, finding that the Respondent had not met his burden of proof in demonstrating
that he was not a danger to the community. *See* DAR (Mar. 1, 2022).

The Respondent filed an appeal with the Board of Immigration Appeals. *See* Bond Appeal
(May 24, 2022). On September 26, 2022, the BIA issued a decision reversing the Court's initial
dangerousness finding and remanding the record back to the Court. *See* BIA Decision (Sept. 26,

2022). In its decision, the BIA found a reanalysis of the Respondent's dangerousness necessary, with the appropriate weight given to the Respondent's dropped criminal charges and specific findings regarding specific corroborative evidence. *See* BIA Decision (Sept. 26, 2022). On January 30, 2023, the Respondent submitted a motion to calendar the custody redetermination hearing following the BIA decision. *See* Exh. R1. The Court then held the Respondent's custody redetermination hearing on February 14, 2023. For the reasons that follow, the Court denies his request for a change in custody status.

## II.   EXHIBITS

| | |
|---|---|
| **Exh. R1:** | The Respondent's Motion to Calendar Custody Redetermination Hearing, received January 30, 2023; |
| **Exh. R2:** | The Respondent's Submission of Evidence, Tabs A-EE, received January 30, 2023; and |
| **Exh. R3:** | The Respondent's Resubmission of Plea Minutes, received February 17, 2023. |

## III.   LEGAL STANDARD AND ANALYSIS

An alien in a custody determination under INA § 236(a) must establish to the satisfaction of the Immigration Judge ("IJ") that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight. *See Matter of Guerra*, 24 I&N Dec. 40 (BIA 2006). An alien who presents a danger to persons or property should not be released during the pendency of proceedings to remove him or her from the United States. *See Matter of Urena*, 25 I&N Dec. 140 (BIA 2009); *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994). Consideration by an IJ of an application or request of a respondent regarding custody or bond under 8 C.F.R. § 1003.19 shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding. *See* 8 C.F.R. § 1003.19(d); *see also Matter of Chirinos,* 16 I&N Dec. 276, 277 (BIA 1977).

In making a custody determination, the Court has broad discretion in what factors to consider. *See Guerra*, 24 I&N Dec. at 40-41. General criteria for consideration of bond includes a record of appearances in court; employment history; criminal record; pending criminal charges; history of immigration violations; attempts to flee prosecution or authorities; manner of entry; membership in community organizations; and immoral acts of participation in subversive activities. *See id; Matter of Patel,* 15 I&N Dec. 666, 667 (BIA 1976). An IJ should not release an alien who presents a danger to persons or property during the pendency of his immigration proceedings. *See Urena*, 25 I&N Dec. 140; *Drysdale*, 20 I&N Dec. 815.

In determining whether an alien presents a danger to the community, IJs are not restricted to considering criminal convictions, and may consider any "probative and specific" evidence in the record. *Guerra*, 24 I&N Dec. at 40-41. As "[t]he question whether an alien poses a danger to the community is broader than determining if the record contains proof of specific acts of past violence or direct evidence of an inclination toward violence," an IJ may rely on circumstantial evidence and a respondent's misrepresentations to determine whether he poses a danger to the community. *Matter of Fatahi*, 26 I&N Dec. 791, 794 (BIA 2016). Accordingly, even if a respondent has not been convicted of offenses charged in a criminal complaint, unfavorable

evidence of conduct, including evidence of criminal activity, is pertinent to the Court regarding whether a respondent poses a danger to the community. *See Matter of Teixeira*, 21 I&N Dec. 316, 321 (BIA 1996) (noting police reports can be considered in matters relating to discretionary relief); *Matter of Thomas*, 21 I&N Dec. 20, 23 (BIA 1995) (noting arrests are pertinent in matters relating to discretionary relief). Only if a respondent has shown he is not a danger should the Court proceed to determine whether he is a flight risk. *See Urena*, 25 I&N Dec. at 141 (citing 8 C.F.R. § 1236.1(c)).

### a. Danger to the Community

Based on his criminal history, the Court finds the Respondent failed to establish that he does not pose a risk of danger to the community. On November 5, 2018, the Respondent was arrested and later convicted of endangering the welfare of a child in violation of New York Penal Law ("NYPL") § 260.10(1).[1] The Respondent pled guilty and was sentenced to time served, three years' probation, and a five-year Order of Protection. *See* Exh. R2, Tab B. The Respondent stated the only time he touched the victim was to give her a single spanking as discipline on a single occasion. *See* DAR (Feb. 14, 2023); *see also* DAR (Mar. 1, 2022). The Respondent further testified that he pled guilty to endangering the welfare of a child because he believed he was guilty of spanking the victim on her behind on this one occasion. *Id.*

Putting aside the Respondent's alleged conduct of sexual abuse,[2] the Respondent did plead guilty to endangering the welfare of a child, which states, "[A] person is guilty of endangering the welfare of a child when: (1) He or she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health […]." *See* NYPL § 260.10. Based upon New York law, the Court finds the Respondent's claim – that his guilty plea and conviction arose from a single spanking on a single occasion – unpersuasive. The Court finds the Respondent has failed to explain what conduct against the child led to his conviction.

Case law in New York demonstrates that the conduct Respondent claims led to his conviction for endangering the welfare of a child falls far short of criminal conduct. For example, in *Malte v. State*, 125 A.D.2d 958 (N.Y. App. Div. 1986), a fourth-grade teacher who picked up a 10-year-old girl, placed her on the floor, straddled her legs, and hit her on the backside approximately 12 times was charged with third degree assault and endangering the welfare of a child. However, despite these charges and these facts, the Fourth Department found that, without condoning the defendant's behavior, there was insufficient factual predicate to establish either crime. *Id.* Specifically, the Fourth Department noted that endangering the welfare of a child, as applicable to these facts, requires that the defendant knowingly act "in a manner likely to be injurious to the physical" welfare of the child. *Id.*; *see also* NYPL § 260.10(1). Physical injury is defined as "impairment of physical condition or substantial pain." *See* NYPL § 10.00(9). Said Court further noted that "petty slaps, shoves, kicks, and the like delivered out of hostility, meanness

---

[1] While not resulting in a conviction, the Respondent was also indicted with course of sexual conduct against a child in the first degree in violation of NYPL § 130.75(1)(a). Exh. R2, Tab C.

[2] *See* BIA Decision (Sept. 26, 2022).

and similar motives [were] not within the definition [of substantial pain]." *See Malte v. State*, 125 A.D.2d at 959 (*relying on Matter of Philip A*, 49 N.Y.2d 198, 200 (N.Y. 1980).

In *Matter of Philip A*, the Court of Appeals of New York held that, as a matter of law, there was no "substantial pain" established beyond a reasonable doubt where the complainant was hit twice in the face, even though the conduct resulted in red marks and pain on the victim's face. *Id.* Similarly, in *People v. McDowell*, the victim suffered a blackened eye, but without any development of its appearance, seriousness, accompanying swelling, or suggestion of pain, the Court of Appeals found it was insufficient to sustain a conviction and found that neither physical impairment nor substantial pain under the definition of "physical injury" were met. 28 N.Y.2d 373 (N.Y. 1971). Mere evidence of being struck or suffering a red mark or a black eye was insufficient for the New York courts to find that the "substantial pain" prong under the definition of "physical injury" had been met. *Malte v. State*, 125 A.D.2d 958, 959 (N.Y. App. Div. 1986).

The Court here considers the Respondent's testimony that he pled guilty to endangering the welfare of a child because he felt guilty for spanking the victim one time. *See DAR* (Feb. 14, 2023). Given the case law above, the Court finds the Respondent's testimony unpersuasive. Moreover, the Court notes that, with respect specifically to corporal punishment, the New York Penal Code provides an exemption from criminal liability for such acts under NYPL § 35.10(1): "The use of physical force upon another person which would otherwise constitute an offense is *justifiable* and *not criminal* under any of the following circumstances: (1) A parent, guardian or other person entrusted with the care and supervision of a person under the age of twenty-one or an incompetent person, and a teacher or other person entrusted with the care and supervision of a person under the age of twenty-one for a special purpose, *may use physical force*, but no deadly physical force, upon such person when and *to the extent that he reasonably believes it necessary to maintain discipline or to promote the welfare of such person.*" *Id.* (emphasis added).

Simply put, the Respondent, whose burden it is to establish he is not a danger to the community, has failed to explain what act(s) he committed that sustained his conviction for endangering the welfare of a child. The Respondent's insistence that all he did was spank the minor child one time is not persuasive in light of conduct required for such a conviction. A single spanking is far from sufficient to sustain a conviction under NYPL§ 260.10(1).

The Respondent provided the Court the plea minutes where he acknowledged in the affirmative that he did touch or grab the minor female without her consent. *See* Exh. R3. Moreover, the judge asked the Respondent, "And, Mr. Molina, when you touched or grabbed this minor child without her consent, did you do so knowingly and in a manner that was likely to be injurious to the physical, mental or moral welfare of that child?" *Id.* The Respondent again answered in the affirmative. *Id.* The judge then stated that he was satisfied that the Respondent had acknowledged his guilt and accepted the plea from the Respondent. *Id.* Under his plea agreement, the Court would note that the Respondent pled guilty to conduct that would have exceeded the conduct that the Respondent alleges, namely, a single spanking. *See* Exh. R3; *see also* DAR (Feb. 14, 2023). As the Court noted in its initial bond decision, ample case law from both the BIA and the Second Circuit have been concerned with the protection of minors. *See Matthew v. Barr*, 927 F.3d 606 (2d Cir. 2019) (concluding that, with regard to Endangerment of a Child, the BIA has "interpret[ed] the term 'crime of child abuse' broadly to mean any offense

4

involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being."); *see also Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 512 (BIA 2008).

With respect to the Respondent's submission of a letter from his criminal defense attorney, Mr. Richard Langone, the Court is unpersuaded as to the attorney's insistence that the plea minutes only reflect a single spanking. *See* Exh. R2, Tab G; *c.f.* Exh. R3. The Court notes that such a statement is not specifically made in the plea minutes. *See* Exh. R3. Further, Mr. Langone was not made available for cross-examination. As such, the Court gives his letter diminished weight and limited probative value. *Id.* However, the Court is persuaded by the acceptance of the plea by the criminal court judge, as the Court notes that a criminal court judge cannot accept a guilty plea unless the Respondent is, in fact, guilty, and in this case, the Respondent pled guilty to committing a crime that requires conduct well beyond one spanking on the buttocks. *See* Exh. R3. There is no explanation from the Respondent how a single spanking would likely be "injurious to the physical, mental, or moral welfare" of the victim when viewed in light of relevant case law. As such, the Respondent has failed to adequately explain what acts(s), physically or otherwise, he knowingly committed that led to the likelihood of the child suffering injury to the extent that the criminal court judge was able to accept a plea of guilty by the Respondent. *See id.*

The Court therefore has serious concerns over the Respondent's behavior and the significant danger he posed to the community resulting in his arrest and conviction. *See* DAR (Feb. 14, 2023); *see also* Exh. R3. What conduct by the Respondent led to the likelihood of the child being harmed and the extent of such conduct remains unclear. The Respondent's failure to take accountability for his actions beyond that of a single spanking of the victim, a minor child, greatly concerns the Court. *Id.* The Court finds the Respondent has not been forthcoming with what actions led to his guilty plea and conviction. Therefore, the Court finds the Respondent has failed to meet his burden to establish he is not a danger to the community.

The Court acknowledges that the record contains the Respondent's I-589 application and notes that the Respondent's merits decision is currently on appeal. *See* Exh. R2, Tab DD. The Court further acknowledges that the Respondent submitted numerous letters from family members and friends. *See* Exh. R2, Tabs K-Z. Nonetheless, such evidence, while significant to flight risk, generally does not mitigate an alien's dangerousness where the issue is whether the Respondent is a danger to the community. *Matter of Siniauskas*, 27 I&N Dec. 207, 210. Despite that he may have equities in the U.S., the Respondent did not meet his burden of proof to establish that he does not pose a danger if released, the threshold issue in a custody redetermination under INA § 236(a).

**a. Flight Risk**

Given that the Court found the Respondent poses a danger to the community, it is not necessary to determine whether he is also a flight risk. *See Urena*, 25 I&N Dec. at 141 (citing 8 C.F.R. § 1236.1(c)).

Accordingly, after a careful review of the record, the following Order is entered:

A216- 57-620

## ORDER

**IT IS HEREBY ORDERED** that the Respondent's request for a change in custody status be **DENIED.**

_____3/3/2023_____
Date

_____
CHARLES CONROY
U.S. Immigration Judge

6

A216-?57-620



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Cornelio, Misael**
**Brooklyn Defender Services**
**177 Livingston Street  7th Floor**
**Brooklyn  NY  11201**

**DHS/ICE Office of Chief Counsel – NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

Name: **MOLINA CANTOR, DENNY**        A  216-557-620

Date of this Notice:    **9/28/2023**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Userteam: <u>Docket</u>



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**MOLINA CANTOR, DENNY**
**A 216557620**
**Adams County Correctional Cent**
**20 HOBO FORK RD**
**NATCHEZ MS 39120**

**DHS/ICE Office of Chief Counsel - NYV**
**201 Varick Street, Rm. 1130**
**New York NY 10014**

Name: **MOLINA CANTOR, DENNY**        **A 216-557-620**

**Date of this Notice:    9/28/2023**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Userteam: <u>Docket</u>

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Denny MOLINA CANTOR, A216-557-620

Respondent

**FILED**
Sep 28, 2023

ON BEHALF OF RESPONDENT: Misael Cornelio, Esquire

IN BOND PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Malphrus, Deputy Chief Appellate Immigration Judge; Petty, Appellate Immigration
Judge; Hunsucker, Appellate Immigration Judge

Opinion by Deputy Chief Appellate Immigration Judge Malphrus

MALPHRUS, Deputy Chief Appellate Immigration Judge

ORDER: The Board affirms, without opinion, the result of the decision below. The decision
below is, therefore, the final agency determination. 8 C.F.R. § 1003.1(e)(4).

PUR/C.ATN/GMCCONN.FBI/5TE3PAD55
THIS INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
RECORD REQUEST FOR FBI/5TE3PAD55. INDIVIDUAL'S RECORD WILL BE
COMPLETE WHEN ALL RESPONSES ARE RECEIVED FROM THE FOLLOWING SOURCES:
 FBI          - FBI/███████
 NEW YORK       STATE ID/NY14490065
END

----------------------------------------------------------------
FEDERAL RESPONSE (WVFBINF00)
REQUESTING ORI:[TXICE0700]
HDR/2L01WWWWTN75F5
ATN/GMCCONN
********************  CRIMINAL HISTORY RECORD  *********************

**************************  Introduction  **************************

This rap sheet was produced in response to the following request:

FBI Number            ███████
Request Id            WWWWTN75F5
Purpose Code          C
Attention             GMCCONN

The information in this rap sheet is subject to the following caveats:

This record is based only on the FBI number in your request-UCN:
5TE3PAD55 Because additions or deletions may be made at any time, a new
copy should be requested when needed for subsequent use.(US;
2021 11 18)

All entries contained in this FBI record are based on fingerprint
comparisons and pertain to the same individual.(US; 2021-11-18)

The use of this record is regulated by law. It is provided for official
use only and may be used only for the purpose requested.(US;
2021-11-18)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
* FEDERAL DEOXYRIBONUCLEIC ACID (DNA) INDICATOR * * * * DNA NOT IN
CODIS - COLLECT DNA * * * - - - - - - - - - - - - - - - - - - - - -
                    (US; 2021 11 18)


**************************  IDENTIFICATION  **************************


Subject Name(s)

MOLINA CANTOR, DENNY S
MOLINA CANTOR, DENNY  (AKA)
MOLINACANTOR, DENNY  (AKA)


Subject Description

FBI Number            State Id Number
███████               NY14490065 (NY)

Miscellaneous Numbers
216557620                           AR

Sex                   Race
Male                  White

Height                    Weight                    Date of Birth
5'08"                     184                       1985-08-22

Hair Color                Eye Color                 Fingerprint Pattern
Black                     Brown                     LSLSLSLSLSAULSLSLSLS  (Other)

Place of Birth            Citizenship
Honduras                  Unknown
                          Honduras

Fingerprint Images

Photo Images
Photo Image Available         FBI CJIS DIV CLRKSBG CLARKSBURG WVFBINF00
Capture Date                  2021-11-16
(No Photo Image Transmitted  )


************************  CRIMINAL HISTORY  ************************

============================= Cycle 001 =============================
Earliest Event Date    2021 11 16
---------------------------------------------------------------------
Arrest Date               2021-11-16
Arrest Case Number        7229304349
Arresting Agency          NYICE3000 ICE ERO CENTRAL ISLIP
Subject's Name            MOLINA CANTOR,DENNY
Charge                    1
        Charge Literal    2021-11-16 212A6AI ALIEN PRESENT WITHOUT
                          ADMISSION OR PAROLE   (PWAS)
              Severity    Unknown
************************  INDEX OF AGENCIES  ************************

Agency                    ICE ERO; NYICE3000;
Agency Email Address
Address
                          535 FEDERAL PL
                          CENTRAL ISLIP, NY 117224421


    * * * END OF RECORD * * * </NLETS>
NCICWS ID:NLETS
NCICWS Correlation ID:270645305
End Federal Response
---------------------------------------------------------------------


---------------------------------------------------------------------
STATE RESPONSE:NEW YORK(NYIII0000)
REQUESTING ORI:[TXICE0700]
HDR/2L01WWWWTN75F5
ATN/GMCCONN
********************  CRIMINAL HISTORY RECORD  ********************

**************************  Introduction  **************************

This rap sheet was produced in response to the following request:

FBI Number                ████████
State Id Number           14490065 ()
Request Id                WWWWTN75F5
Purpose Code              C
Attention                 GMCCONN

The information in this rap sheet is subject to the following caveats:

Subject currently on Probation - Nassau County Probation

Multi-Source - Subject has information maintained by other states or in
multiple NYS files maintained by the FBI available through the
Interstate Identification Index. Refer to FBI Number: 5TE3PAD55

DNA SAMPLE OWED: Required to provide a DNA sample, suitable for
testing, for inclusion in the New York State DNA Databank. If
additional DNA Databank information is required call DCJS Office of
Forensic Services at (518)457 1901

Violent Felony offense(s) on file

Sentencing   Where an individual is sentenced June 1, 1981 or later on
more than one charge within a docket, the sentence may be considered to
be concurrent unless identified as consecutive.


*************************   IDENTIFICATION   *************************

Subject Name(s)

Molina Cantor, Denny
MOLINA CANTOR, DENNY

Subject Description

FBI Number                  State Id Number
███████                      14490065Y


Sex                          Skin Tone
Male                         Medium

                             Date of Birth

Hair Color      Eye Color
Black           Brown


Place of Birth               Ethnicity
Honduras                     Hispanic Or Latino

Residence
Residence as of

                110 Wells Farm Rd
                Goshen, NY 10924

Residence as of

                35 ELK ST
                9F
                HEMPSTEAD, NY 11550


*************************   CRIMINAL HISTORY   *************************

                          Cycle 001
Tracking Number         68806528J
Earliest Event Date     2018-11-05 Incident Date         2018-11-01
-------------------------------------------------------------------
Arrest Date             2018 11 05
Arresting Agency        NY0290000 Nassau Co PD - Communication Bureau
Subject's Name          MOLINA CANTOR, DENNY

Case 1:24-cv-07634-JLR   Document 21-1   Filed 08/25/24   Page 55 of 69

```
         Offender Id Number  011000634784
         Comment(s)          Court of Arraignment : NY029013J NASSAU COUNTY
                             1ST DISTRICT COURT
Charge Tracking Number  68806528J
               Statute  Rape 1st: Intercourse With Person Less Than 11
                        Years Old (130.35 SUB 03 )
      NCIC Offense Code  1116
     State Offense Code  PL 130.35 SUB 03
                Counts  2
              Severity  Felony
       Inchoate Charge  Completed
Charge Tracking Number  68806528J
               Statute  Criminal Sexual Act-1st Degree: Victim Less
                        Than 11 Years Old (130.50 SUB 03 )
      NCIC Offense Code  3699
     State Offense Code  PL 130.50 SUB 03
                Counts  2
              Severity  Felony
       Inchoate Charge  Completed
Charge Tracking Number  68806528J
               Statute  Sexual Abuse 1st:Sexual Contact With Individual
                        Less Than 11Years Old (130.65 SUB 03 )
      NCIC Offense Code  1117
     State Offense Code  PL 130.65 SUB 03
                Counts  2
              Severity  Felony
       Inchoate Charge  Completed
----------------------------------------------------------------------
Court Disposition       (Cycle 001)
Court Case Number       00432N-2019
Final Disposition Date  2021-11-05
Court Agency            NY029132J Nassau County Court
Charge Tracking Number  68806528J
               Statute  Act In Manner Injure Child Less Than 17 (260.10
                        SUB 01 )
     State Offense Code  PL 260.10 SUB 01
                Counts  1
              Severity  Misdemeanor
       Inchoate Charge  Completed
           Disposition  ( 2021-11-05; Convicted Upon Plea Of Guilty)
----------------------------------------------------------------------
Sentencing              (Cycle 001)
Sentence Date           2021-11-05
Court Case Number       00432N-2019
Charge Tracking Number  68806528J
               Statute  Act In Manner Injure Child Less Than 17 (260.10
                        SUB 01 )
      NCIC Offense Code  3801
     State Offense Code  PL 260.10 SUB 01
                Counts  1
              Severity  Misdemeanor
       Inchoate Charge  Completed
           Disposition  ( 2021-11-05; )
Sentence                Probation: 3 Year(s)Order of Protection Term:
                        Time Served

----------------------------------------------------------------------
Corrections             (Cycle 001)
Supervision Date        2021-11-05
Corrections Agency      NY029013G Nassau County Probation
Subject's Name          Molina Cantor, Denny
Correctional Id Number  4087303
      Supervision Case Number  IND-00432N-2019
         Court Case Number  IND-00432N-2019
         Correction Action  Max Expiration Date: 2024-09-05
```

```
Charge Tracking Number  722090388Y
            Statute  Endangering The Welfare Of A Child (260.10 )
  NCIC Offense Code  3899
 State Offense Code  PL 260.10
             Counts  1
           Severity  Misdemeanor
    Inchoate Charge  Completed
************************  INDEX OF AGENCIES  ************************


Agency                 Nassau Co PD - Communication Bureau; NY0290000;

----------------------------------------------------------------------
Agency                 Nassau County Probation; NY029013G;


Agency                 Nassau County Court; NY029123J;



    * * * END OF RECORD * * *  /NLETS
NCICWS ID:NLETS
NCICWS Correlation ID:270645305
End State Response: NEW YORK
```

Department of Homeland Security
Bureau of Immigration and Customs Enforcement                **Notice to EOIR: Alien Address**

---

Date:  November 17, 2021

To:       Office of the Immigration Judge, EOIR
          201 Varick St, Rm 507
          New York, NY  10014

From:   ICE ERO
          201 Varick St
          New York, NY  10014

Respondent:  **Molina Cantor, Denny**              A Number: **216 557 620**

---

This is to notify you that this respondent is:

☐  Currently incarcerated by federal, state or local authorities.  A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by ICE (Form I-247) has been filed with the institution shown below.  He/she is incarcerated at:

His/her anticipated release date is.

☒  Detained by ICE on      **November 16, 2021**
                                     **Orange County Jail**
                                     **110 Wells Farm Road**
                                     **Goshen, NY   10924**

☐  Detained by ICE and transferred on

☐  Released from ICE custody on the following condition(s):
        ☐  Order of Supervision or Own Recognizance (Form I-220A)
        ☐  Bond in the amount of *Enter Dollar Amount of Respondent's Bond*
        ☐  Removed, Deported, or Excluded
        ☐  Other   transferred

---

Upon release from ICE custody, the respondent reported his/her address and telephone number would be:

☐  I hereby certify that the respondent was provided an EOIR-33 Form and notified that they must inform the Immigration Court of any further change of address.

<u>ICE Official</u>:  **Wave Boyd, SDDO**

                                                                            **Form I-830 (Rev.4/26/99) N**

EOIR – 1 of 5

## DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

DOB: 08/22/1985

Event No: CIP2211000198

---

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: 373682351

FINS: 1314148260

File No: 216 557 620

In the Matter of:

Respondent: DENNY MOLINA CANTOR _____ currently residing at:

371 Cochran Pl Valley Stream, NEW YORK, 11581 _____ (347) 348-1578

(Number, street, city, state and ZIP code) — (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of HONDURAS and a citizen of HONDURAS;

3. You entered the United States at an unknown place, on an unknown date;

4. At that time you arrived at a time or place other than as designated by the Attorney General.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30 ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

201 Varick St. 5TH FL RM 507 New York NY 10014. New York Varick

(Complete Address of Immigration Court, including Room Number, if any)

on November 23, 2021 at 8:30 AM to show why you should not be removed from the United States based on the

(Date) — (Time)

charge(s) set forth above.

E 1174 BOWMAN - SDDO

(Signature and Title of Issuing Officer) (Sign in ink)

Date: November 16, 2021

East Meadow, NY

(City and State)

---

EOIR - 2 of 5

DHS Form I-862 (2/20)

## Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

U.S. Citizenship Claims: If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

## Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before:

_____
*(Signature of Respondent) (Sign in ink)*

Date: _____

_____
*(Signature and Title of Immigration Officer) (Sign in ink)*

## Certificate of Service

This Notice To Appear was served on the respondent by me on $11/16/2021$ , in the following manner and in compliance with section 239(a)(1) of the Act.

☐ in person   ☐ by certified mail, returned receipt # _____ requested   ☐ by regular mail
☐ Attached is a credible fear worksheet.
☐ Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the ___SPANISH___ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

_____
*(Signature of Respondent if Personally Served) (Sign in ink)*

_____
*(Signature and Title of officer) (Sign in ink)*

DHS Form I-862 (2/20)        Page 2 of 3

## Privacy Act Statement

**Authority:**

The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a. and 1360), and the regulations issued pursuant thereto.

**Purpose:**

You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**

For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**

Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

DHS Form I-862 (2/20)

Page 3 of 3

Uploaded on: 11/17/2021 at 2:56:16 p.m. (Eastern Standard Time) - Base Only

DEPARTMENT OF HOMELAND SECURITY
## NOTICE OF CUSTODY DETERMINATION

Alien's Name: MOLINA CANTOR, DENNY

A-File Number: 216 557 620

Date: 11/16/2021

Event ID: CIP2211000198

Subject ID: 373682351

---

Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be:

[X] Detained by the Department of Homeland Security.

[ ] Released (check all that apply):

    [ ] Under bond in the amount of $ _____

    [ ] On your own recognizance.

    [ ] Under other conditions. [Additional document(s) will be provided.]

*E. Bowman, E. Bruun*
Name and Signature of Authorized Officer

11/16/2021 07:22 AM
Date and Time of Custody Determination

*SDDO*
Title

Office Location/Address

---

You may request a review of this custody determination by an immigration judge.

    [ ] I acknowledge receipt of this notification, and

        [ ] I **do** request an immigration judge review of this custody determination.

        [ ] I **do not** request an immigration judge review of this custody determination.

*Refused sign*
Signature of Alien

11/16/2021
Date

---

The contents of this notice were read to MOLINA CANTOR, DENNY in the SPANISH language.
                              (Name of Alien)                (Name of Language)

*C. Limoncelli*
Name and Signature of Officer

*NIA*
Name or Number of Interpreter (if applicable)

Title

DHS Form I-286 (1/14)

Page 1 of 1



666 Broadway, 7th Floor
New York, New York 10012
212-614-6464
ccrjustice.org

February 16, 2024

*Sent via email and agency online portals*

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
Compliance Branch, Mail Stop #0190
2707 Martin Luther King, Jr. Ave., SE
Washington, DC 20528-0190
CRCLCompliance@hq.dhs.gov

Office of Inspector General
U.S. Department of Homeland Security
DHS Office of Inspector General/MAIL STOP 0305
245 Murray Lane SW
Washington, DC 20528-0305
dhs-oig.officepublicaffairs@oig.dhs.gov

Office of the Immigration Detention Ombudsman (OIDO)
Mail Stop 0134
Department of Homeland Security
Washington DC 20528-0134
David.Gersten@hq.dhs.gov

**RE: Denny Molina Cantor (A No. 216-557-620) — Request for investigation at Buffalo Service Processing Center, Batavia, New York**

To Whom It May Concern:

The Center for Constitutional Rights represents Mr. Denny Molina Cantor (A No. 216-557-620), who is currently detained at Buffalo Service Processing Center in Batavia, New York (hereinafter "Batavia"). Mr. Molina Cantor has been detained at Batavia since approximately December 22, 2023, and since that time has been confined to his cell the vast majority of every day, exposed to COVID-19, deprived of an adequate wellness diet for his prediabetic condition, and witnessed gross failures and abuses by staff in responding to medical emergencies and interacting with detained people. Mr. Molina has already expressed concern about many of these issues with Batavia staff, but these issues remain unaddressed. We write to request an investigation of Batavia by your offices, and to request Mr. Molina's immediate transfer to an open dorm housing unit, such as B2, at Batavia.

**I.       Mr. Molina Is Currently Locked in His Cell 19 Hours Per Day, and This Is Harming His Health**

Mr. Molina is housed in A1, a general population housing unit comprised of two-person cells. He and others in his unit are typically allowed out of their cells for about five hours per day, which includes the

time allotted for meals and showers. During this time, detained people have the option to be either in the dayroom or on the yard. On Saturdays, people in Mr. Molina's unit can also choose to be in a small room with a basketball hoop during out-of-cell time. For the remaining approximately 19 hours each day, Mr. Molina is locked in a small cell with one other person.

The conditions in Mr. Molina's general population unit at Batavia are dangerously close to those in solitary confinement.[1] The well-documented harms of solitary confinement include post-traumatic stress disorder, increased risks of self-harm and suicide, hallucinations, confusion, disrupted sleep, reduced cognitive function, lasting brain damage, and heart palpitations.[2] People can begin to experience the harms of solitary confinement within hours of isolation.[3]

Moreover, the practice of double-celling at Batavia does not ameliorate the harmful effects of isolation. Dr. Craig Haney, a widely regarded expert on solitary confinement, has explained that people isolated in double cells "in some ways . . . have the worst of both worlds: they are 'crowded' in and confined with another person inside a small cell but—and this is the crux of their 'isolation'—simultaneously isolated from the rest of the mainstream prisoner population, deprived of even minimal freedom of movement, prohibited from access to meaningful prison programs, and denied opportunities for any semblance of 'normal' social interaction."[4] One example of the unique torture of double-celling is that, in Mr. Molina's cell, the toilet only holds enough water for about four flushes per hour. So there are times when Mr. Molina or his cellmate use the restroom and are not able to flush the toilet immediately, requiring both men to remain in a small cell with a full toilet until there is enough water to flush again.

The conditions in Mr. Molina's unit at Batavia are so restrictive as to be unquestionably punitive. This violates the Fifth Amendment of the U.S. Constitution. Immigration detention, like pretrial detention, may not be punitive in nature. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) ("[T]he pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to any form of 'punishment.'").

Furthermore, Batavia is violating the 2011 Performance-Based National Detention Standards, 2016 revision ("PBNDS") requirements for out-of-cell time in general population. PBNDS requires facilities to provide people in general population with at least four hours a day, seven days a week, of <u>outdoor recreation</u>.[5] If weather prevents outdoor recreation, facilities are required to provide access to indoor recreational opportunities, preferably with natural light.[6] Facilities are also required to provide daily indoor recreation.[7] Batavia provides five hours *total* out-of-cell time to people in Mr. Molina's general population unit, which includes the time allotted for showering and meals. This means that detained people have access to recreation for less than the required four hours because eating three meals and

---

[1] Solitary confinement is "generally defined as isolating someone in a cell for 22 hours or more per day without meaningful human contact." *See* Physicians for Human Rights et al., *"Endless Nightmare": Torture and Inhuman Treatment in Solitary Confinement in U.S. Immigration Detention* 6 (2024).

[2] *Id.*

[3] Solitary Watch and Unlock the Box, *Calculating Torture* 3 n. 4 (2023) (citing Christopher Wildeman and Lars H. Andersen, *Solitary Confinement Placement and Post-release Mortality Risk Among Formerly Incarcerated Individuals: A Population-Based Study*, 5 Lancet Public Health 107 (February 2020)).

[4] *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1239 n.64 (M.D. Ala. 2017) (citation omitted).

[5] PBNDS 5.4(II).

[6] *Id.*

[7] *Id.*

2

taking a shower generally takes more than one hour. Moreover, people at Batavia do not have access to the small indoor recreation space every day. This is particularly harmful given the winter climate in Batavia, New York at the moment. When temperatures are below freezing and there is snow on the ground, people should have access to indoor recreation every single day, according to PBNDS.

Mr. Molina is already experiencing the harms of isolations. He has experienced increased anxiety, depression, and audio hallucinations as a result of spending 19 hours per day locked in his cell at Batavia. Mr. Molina therefore requests immediate transfer to an open dorm housing unit, such as B2, at Batavia.

## II.   Batavia Is Failing to Comply with ICE's Post Pandemic Emergency COVID-19 Guidelines and Protocols

Mr. Molina is regularly exposed to be people who are testing positive for COVID-19. As of February 2, 2024, approximately six people in Mr. Molina's unit were positive for COVID-19. As of February 9, 2024, approximately 11 people in the unit were positive. ICE's currently operative *Post Pandemic Emergency COVID-19 Guidelines and Protocols* state that people who test positive for COVID-19 are to isolate for ten days post-symptom development or positive test.[8] COVID patients can retest on day five and be released from isolation on day seven if they test negative.[9] Batavia is failing to ensure that people who are COVID positive are isolating for the required time, as evidenced by the increase in COVID cases in Mr. Molina's unit.

## III.   Batavia Is Failing to Provide Mr. Molina Nutritionally Adequate Food Appropriate for His Prediabetes Condition

Mr. Molina has been diagnosed as prediabetic and placed on a special wellness diet. Such a diet should include non-starchy vegetables, healthy, complex carbohydrates, and lean protein.[10] The PBNDS requires nutritionally balanced and adequate meals.[11] PBNDS requires, "Therapeutic medical diets and supplemental food shall be provided as prescribed by appropriate clinicians."[12] The food served to people prescribed the wellness diet at Batavia is not nutritionally adequate or appropriate for people with prediabetes. For example, Batavia serves Mr. Molina potatoes nearly every day and few, if any, non-starchy vegetables.

Additionally, the eating utensils provided to Mr. Molina are frequently not clean and in poor condition. This also violates the PBNDS, which requires proper sanitation and maintenance of food service utensils, including replacement when necessary. PBNDS 4.1(V)(B)(2), (V)(D)(2)(e), (V)(J)(7).

---

[8] ICE ERO, Post Pandemic Emergency COVID-19 Guidelines and Protocols, v.2 at 10 (July 13, 2023).
[9] *Id.*
[10] Tara Seymour, *Prediabetes Diet*, Johns Hopkins Medicine; Cleveland Clinic, What to Eat If You've Been Diagnosed with Prediabetes (Aug. 23, 2022).
[11] PBNDS 4.1(II)(1), (V)(A)(1)(e), (V)(E).
[12] PBNDS 4.1(II)(10).

## IV.    Batavia Staff Do Not Respond Appropriately to or Prevent Medical Emergencies

Recently, three different people in Mr. Molina's housing unit have experienced what appeared to be medical emergencies that Batavia did not respond to in a timely manner or at all. PBNDS requires facilities to make 24-hour emergency medical and mental health services available to all detained people.[13] Further, "detention and health care personnel shall be trained annually to respond to health-related situations **within four minutes**" and facilities must have in place "security procedures that ensure the immediate transfer of detainees for emergency medical care."[14]

Batavia appears to be falling very short of these requirements. One person in Mr. Molina's unit complained of a headache so severe that he was screaming. A nurse did not arrive until approximately 20 minutes after the person began screaming for help. The nurse arrived alone and with only a wheelchair. Another person complained of abdominal pain, but a nurse never came. And a third person was very ill and yelled for emergency care. Lieutenant Glennon responded, but medical staff never attended to the person in his cell, and the person was not taken to the healthcare unit.

These failures pose a serious risk of harm to detained people experiencing healthcare emergencies and should be addressed urgently.

Finally, Batavia has failed to take one obvious step to prevent medical emergencies: utilizing bunk beds that have a safety barrier on the top bunk. At least one person in Mr. Molina's housing unit has sustained a head injury due to falling from his top bunk. While bed rails may not be common in prisons and detention centers because they can be a ligature tie-off point, many facilities utilize suicide-resistant bunk beds with safety barriers. For example, Pine Prairie ICE Processing Center in Louisiana utilizes safety barriers on the top bunks. Further, the risk of harm from falling out from a top bunk is compounded by Batavia staff's failure to respond appropriately to medical emergencies.

## V.    Batavia Staff Interact with Detained People in an Abusive and Unprofessional Manner

Mr. Molina has experienced abusive and unprofessional conduct from at least two officers at Batavia. First, Lieutenant Glennon orders people in Mr. Molina's unit to lockdown in their cells when there are people still showering. Detained people understand that they are expected to leave the shower immediately and go to their cells while naked, risking punishment otherwise. This violates the Prison Rape Elimination Act and the PBNDS, especially if there are women officers assigned to the unit at the time.[15]

Also, on two occasions, Officer C. Nichols has yelled at Mr. Molina for no apparent reason. Most recently, on February 9, 2024, Mr. Molina went to pill call. While there, Officer C. Nichols yelled at him for no apparent reason and told him to shut up. Mr. Molina has witnessed Officer Nichols speak to other detained people in this manner.

---

[13] PBNDS 4.3(II)(9).
[14] PBNDS 4.3(V)(T)(1)(e)-(f) (emphasis added).
[15] 28 C.F.R. § 115.15(d); PBNDS 2.11(IV)(D)(1)(f) ("Detainees shall be able to shower, perform bodily functions, and change clothing without being viewed by staff of the opposite gender . . ."); PBNDS 4.5(V)(E) (same).

## VI.    Conclusion

Batavia is violating ICE standards and federal law in a number of areas. The people locked in their cells for 19 hours per day are suffering the well-known harms of solitary confinement. This should be investigated and remedied facility-wide, and in the meantime, Mr. Molina requests immediate transfer to an open dorm unit at Batavia, such as B2. Mr. Molina also respectfully requests that OIG, CRCL, and OIDO investigate Batavia's compliance with COVID policies, provision of special diets, response to medical emergencies, and professionalism among staff.

Sincerely,

CJ Sandley
Staff Attorney
Center for Constitutional Rights
PO Box 486
Birmingham, Alabama 35201

Attach: Signed G-28 for Denny Molina Cantor



## Notice of Entry of Appearance
## as Attorney or Accredited Representative

### Department of Homeland Security

**DHS**
**Form G-28**
OMB No. 1615-0105
Expires 05/31/2021

---

### Part 1. Information About Attorney or Accredited Representative

1. USCIS Online Account Number (if any)
   ▶ [blank]

#### Name of Attorney or Accredited Representative

2.a. Family Name (Last Name)  **Sandley**

2.b. Given Name (First Name)  **Caitlin**

2.c. Middle Name  **Joy**

#### Address of Attorney or Accredited Representative

3.a. Street Number and Name  **PO Box 486**

3.b. ☐ Apt. ☐ Ste. ☐ Flr. [blank]

3.c. City or Town  **Birmingham**

3.d. State  **AL**   3.e. ZIP Code  **35201**

3.f. Province [blank]

3.g. Postal Code [blank]

3.h. Country  **USA**

#### Contact Information of Attorney or Accredited Representative

4. Daytime Telephone Number  **2126146443**

5. Mobile Telephone Number (if any) [blank]

6. Email Address (if any)  **csandley@ccrjustice.org**

7. Fax Number (if any) [blank]

---

### Part 2. Eligibility Information for Attorney or Accredited Representative

Select **all** applicable items.

1.a. ☒ I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest courts of the following states, possessions, territories, commonwealths, or the District of Columbia. If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

Licensing Authority
**AL and GA State Bar**

1.b. Bar Number (if applicable)
**AL 5317-548R; GA 610130**

1.c. I (select **only one** box) ☒ am not ☐ am subject to any order suspending, enjoining, restraining, disbarring, or otherwise restricting me in the practice of law. If you are subject to any orders, use the space provided in **Part 6. Additional Information** to provide an explanation.

1.d. Name of Law Firm or Organization (if applicable)
**Center for Constitutional Rights**

2.a. ☐ I am an accredited representative of the following qualified nonprofit religious, charitable, social service, or similar organization established in the United States and recognized by the Department of Justice in accordance with 8 CFR part 1292.

2.b. Name of Recognized Organization [blank]

2.c. Date of Accreditation (mm/dd/yyyy) [blank]

3. ☐ I am associated with [blank], the attorney or accredited representative of record who previously filed Form G-28 in this case, and my appearance as an attorney or accredited representative for a limited purpose is at his or her request.

4.a. ☐ I am a law student or law graduate working under the direct supervision of the attorney or accredited representative of record on this form in accordance with the requirements in 8 CFR 292.1(a)(2).

4.b. Name of Law Student or Law Graduate [blank]

---

## Part 3. Notice of Appearance as Attorney or Accredited Representative

If you need extra space to complete this section, use the space provided in **Part 6. Additional Information.**

This appearance relates to immigration matters before (select **only one** box):

**1.a.** ☐ U.S. Citizenship and Immigration Services (USCIS)

**1.b.** List the form numbers or specific matter in which appearance is entered.

**2.a.** ☒ U.S. Immigration and Customs Enforcement (ICE)

**2.b.** List the specific matter in which appearance is entered.

Detention conditions

**3.a.** ☐ U.S. Customs and Border Protection (CBP)

**3.b.** List the specific matter in which appearance is entered.

**4.** Receipt Number (if any)

▶

**5.** I enter my appearance as an attorney or accredited representative at the request of the (select **only one** box):
☐ Applicant ☐ Petitioner ☐ Requestor
☐ Beneficiary/Derivative ☒ Respondent (ICE, CBP)

## Information About Client (Applicant, Petitioner, Requestor, Beneficiary or Derivative, Respondent, or Authorized Signatory for an Entity)

**6.a.** Family Name (Last Name)  Molina Cantor

**6.b.** Given Name (First Name)  Denny

**6.c.** Middle Name

**7.a.** Name of Entity (if applicable)

**7.b.** Title of Authorized Signatory for Entity (if applicable)

**8.** Client's USCIS Online Account Number (if any)

▶

**9.** Client's Alien Registration Number (A-Number) (if any)

▶ A- 216-557-620

## Client's Contact Information

**10.** Daytime Telephone Number

585-344-6500

**11.** Mobile Telephone Number (if any)

**12.** Email Address (if any)

## Mailing Address of Client

**NOTE:** Provide the client's mailing address. **Do not** provide the business mailing address of the attorney or accredited representative **unless** it serves as the safe mailing address on the application or petition being filed with this Form G-28.

**13.a.** Street Number and Name  4250 Federal Drive

**13.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**13.c.** City or Town  Batavia

**13.d.** State  NY  **13.e.** ZIP Code  14020

**13.f.** Province

**13.g.** Postal Code

**13.h.** Country  USA

## Part 4. Client's Consent to Representation and Signature

### Consent to Representation and Release of Information

I have requested the representation of and consented to being represented by the attorney or accredited representative named in **Part 1.** of this form. According to the Privacy Act of 1974 and U.S. Department of Homeland Security (DHS) policy, I also consent to the disclosure to the named attorney or accredited representative of any records pertaining to me that appear in any system of records of USCIS, ICE, or CBP.

## Part 4. Client's Consent to Representation and Signature (continued)

### Options Regarding Receipt of USCIS Notices and Documents

USCIS will send notices to both a represented party (the client) and his, her, or its attorney or accredited representative either through mail or electronic delivery. USCIS will send all secure identity documents and Travel Documents to the client's U.S. mailing address.

If you want to have notices and/or secure identity documents sent to your attorney or accredited representative of record rather than to you, please select **all applicable** items below. You may change these elections through written notice to USCIS.

**1.a.** ☐ I request that USCIS send original notices on an application or petition to the business address of my attorney or accredited representative as listed in this form.

**1.b.** ☐ I request that USCIS send any secure identity document (Permanent Resident Card, Employment Authorization Document, or Travel Document) that I receive to the U.S. business address of my attorney or accredited representative (or to a designated military or diplomatic address in a foreign country (if permitted)).

**NOTE:** If your notice contains Form I-94, Arrival-Departure Record, USCIS will send the notice to the U.S. business address of your attorney or accredited representative. If you would rather have your Form I-94 sent directly to you, select **Item Number 1.c.**

**1.c.** ☐ I request that USCIS send my notice containing Form I-94 to me at my U.S. mailing address.

### Signature of Client or Authorized Signatory for an Entity

**2.a.** Signature of Client or Authorized Signatory for an Entity

➡️ Denny Alfino

**2.b.** Date of Signature (mm/dd/yyyy)  01/14/24

## Part 5. Signature of Attorney or Accredited Representative

I have read and understand the regulations and conditions contained in 8 CFR 103.2 and 292 governing appearances and representation before DHS. I declare under penalty of perjury under the laws of the United States that the information I have provided on this form is true and correct.

**1.a.** Signature of Attorney or Accredited Representative

*[signature]*

**1.b.** Date of Signature (mm/dd/yyyy)  01/05/2024

**2.a.** Signature of Law Student or Law Graduate

**2.b.** Date of Signature (mm/dd/yyyy)